## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P.,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Case No. 11-cv-2684 KHV/DJW |
| ) | |
| COMCAST CABLE COMMUNICATIONS, LLC,  ) | |
| COMCAST CORPORATION,  ) | |
| COMCAST IP PHONE, LLC, and  ) | |
| COMCAST PHONE OF KANSAS, LLC,  ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants.  ) | |
| ) | |

## COMPLAINT

Plaintiff Sprint Communications Company L.P. complains as follows against defendants Comcast Cable Communications, LLC, Comcast Corporation, Comcast IP Phone, LLC, and Comcast Phone of Kansas LLC.

## PARTIES

1.      Plaintiff Sprint Communications Company L.P. ("Sprint") is a Limited Partnership organized and existing under the laws of the State of Delaware, with its principal place of business at 6200 Sprint Parkway, Overland Park, Kansas 66251.

2.      On information and belief, defendant Comcast Cable Communications, LLC is a Limited Liability Company organized and existing under the laws of the State of Delaware, with its principal place of business at One Comcast Center, 1701 JFK Blvd., Philadelphia, Pennsylvania 19103-2838.

3.      On information and belief, defendant Comcast Corporation is a Corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal

place of business at One Comcast Center, 1701 JFK Blvd., Philadelphia, Pennsylvania 19103-2838.

4.      On information and belief, defendant Comcast IP Phone, LLC is a Limited Liability Company registered to do business in the State of Kansas and organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at One Comcast Center, 1701 JFK Blvd., Philadelphia, Pennsylvania 19103-2838 in care of Comcast Corporation.

5.      On information and belief, defendant Comcast Phone of Kansas, LLC is a Limited Liability Company registered to do business in the State of Kansas and organized and existing under the laws of the State of Delaware, with its principal place of business at One Comcast Center, 1701 JFK Blvd., Philadelphia, Pennsylvania 19103-2838 in care of Comcast Corporation.

6.      On information and belief, Comcast Cable Communications, LLC, Comcast Corporation, Comcast IP Phone, LLC, and Comcast Phone of Kansas LLC (collectively, "Comcast"), and/or one or more of their affiliates provide and/or participate in providing broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice.

## JURISDICTION

7.      This is an action for patent infringement under the United States Patent Laws, 35 U.S.C. § 271, *et. seq.*  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

8.      On information and belief, defendants Comcast Cable Communications, LLC and Comcast Corporation conduct business in this Judicial District and have committed acts of patent

infringement in this Judicial District including, *inter alia*, importing, making, using, offering for sale, and/or selling infringing products and/or services in this Judicial District.

9.      On information and belief, defendants Comcast IP Phone, LLC and Comcast Phone of Kansas, LLC are registered to do business in this Judicial District, conduct business in this Judicial District, and have committed acts of patent infringement in this Judicial District including, *inter alia*, importing, making, using, offering for sale, and/or selling infringing products and/or services in this Judicial District.  Defendants Comcast Cable Communications, LLC, Comcast Corporation, Comcast IP Phone, LLC, and Comcast Phone of Kansas LLC are hereinafter referred to as "Comcast," separately and collectively.

## VENUE

10.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## JOINDER

11.      Joinder of Defendants is proper under 35 U.S.C. § 299.  The allegations of patent infringement contained herein arise out of the same series of transactions or occurrences relating to the making, using, offering for sale, and/or selling within the United States, and/or importing into the United States, of the same accused products/services, including Defendants' Digital Voice and XFinity Voice.

12.      Common questions of fact relating to Defendants' infringement will arise in this action.

## FACTUAL BACKGROUND

### Sprint's Voice-over-Packet ("VoP") Technology

13.      In 1993, Sprint's  leading technology specialists and engineers were attempting to solve a very important problem affecting Sprint's ability to expand its network to support its

rapidly growing customer base.  At that time, virtually all voice traffic was carried over the Public Switched Telephone Network ("PSTN"), which utilized highly complex, extremely expensive switches and other well-established components to route this traffic.  One solution to Sprint's problem—a solution that Sprint had used in the past—was to simply purchase additional switches from the legacy manufacturers and install those in its network.  Adding switches, however, was extremely expensive and time consuming because Sprint's entire network of switches would have to be reprogrammed for each switch addition or upgrade.  In addition, voice traffic on the PSTN was transported using inherently inefficient synchronous circuit-switching.  A circuit was reserved for the entire length of a call on the PSTN, which wasted significant bandwidth during periods of time when no conversation was occurring.  But legacy circuit-based systems had long been widely used to carry voice communications, and there were no viable alternatives in the marketplace available to Sprint or other carriers at the time.

14.    One of Sprint's talented technologists, Joe Christie, observed that data communications between computers were handled differently.  Computers communicated with each other using "packets" of data.  Packet communications, unlike the synchronous communications of the PSTN, could occur "asynchronously" where the sending and receiving points could send and receive out of synch with each other.  This created an opportunity to realize substantial efficiencies by transmitting voice data packets only when there is voice data to send and refraining from wasting valuable bandwidth during periods of silence.  In addition, unlike the complex and expensive switches used in the PSTN, data packets could be routed using fairly inexpensive components that could be made available from a number of competing vendors.  Unfortunately, the two systems were not compatible with each other.  Interfacing a

circuit-switched system with a packet-based system in a geographically expansive telecommunications environment was not a reality, at least not before Joe Christie.

15.     Joe Christie was an expert in two dissimilar technologies:  packet-based networks and SS7 signaling (which was used by the PSTN to set up voice calls).  Mr. Christie proposed a solution that would ultimately revolutionize the telecommunications industry.  He devised a way to leverage the efficiencies of packet-based networks to make telephone calls to and from the PSTN.  To do so, Mr. Christie invented a series of architectures, components, and processes that would allow the PSTN to "talk" to packet-based networks to set up and route telephone calls across these disparate networks in a seamless and transparent manner.  These calls were highly efficient and substantially decreased the need for telephone companies to rely on expensive legacy PSTN equipment.

16.     Mr. Christie's Voice-over-Packet ("VoP") technology reduced or eliminated the need of service providers to rely on conventional switches and switch-to-switch call processing. Instead, Mr. Christie conceived of centralizing network control by using a call processor to orchestrate calls over his new packet-based system.  The call processor acted like the brains of the network, determining where a call needed to go and then enabling routing to its destination. This call processor extracted the intelligence of expensive and complicated legacy switches and placed this intelligence on functionally separate computer platforms.  By extracting call control from the switch manufacturers, Mr. Christie allowed a host of competitors to provide processing equipment and to get into the business of telephony.  This innovation would eventually increase competition, drive down the costs of telephony, and greatly improve efficiency.

17.     When Mr. Christie presented his innovations to Sprint executives and Sprint technical management, they recognized the importance of his innovations.  Mr. Christie's

inventions had the potential to render obsolete major components within the PSTN and to break the grip that switch manufacturers held on carriers and service providers.   Mr. Christie's innovations could dramatically alter the way telephone calls were made and change the landscape of the relative strength and leverage of the players in the industry.   They  represented a sea change in telephony, and Mr. Christie's  colleagues at Sprint, including upper-level executives, realized it.  Sprint promptly assigned a patent agent to shadow Mr. Christie  to learn as much as possible about the various aspects of his new systems and to seek patent protection.  Sprint also assigned a team of some of Sprint's most talented engineers to work with Mr. Christie and to help develop concepts into tangible platforms.  Due to the highly sensitive nature of the project, the team was sequestered in a Kansas City facility and instructed to maintain the project in the strictest of confidence.  Few people in Sprint knew of this project at the time.

18.     Joe Christie died unexpectedly in his home in February of 1996.  Mr. Christie did not live to see his innovations deployed into a commercial platform.   But Mr. Christie's revolutionary inventions have an enduring legacy.   Mr. Christie's inventions and the related innovations made by people working with Mr. Christie have resulted in a VoP patent portfolio of over 120 issued United States Patents.  Unfortunately, many companies in the industry, including Comcast, have realized the great value in this technology and have misappropriated it without Sprint's permission.  It is because of this unauthorized use that Sprint has taken efforts to enforce this patent portfolio against others in the industry in the past and is now enforcing its patents in this case.

### Sprint's Enforcement Efforts and Licenses

19.     In 2007, in the matter styled *Sprint Communications Co. L.P. v. Vonage Holdings Corp. et al.*, Case No. 05-2433-JWL (D. Kan.), a  Kansas jury found that Vonage Holdings Corp.

and Vonage America, Inc. ("Vonage") had infringed six patents contained in this portfolio, including patents that are at issue in this case, found that the six patents were valid, assessed a five percent (5 %) reasonable royalty, and awarded Sprint $69.5 million in damages.  Following the verdict, Vonage entered a settlement agreement with Sprint whereby Vonage paid Sprint $80 million for a license to Sprint's VoP portfolio.  Previously, in that same matter, tglo.com, Inc. (formerly known as VoiceGlo Holdings, Inc) and Theglobe.com Inc. ("VoiceGlo") had entered a settlement agreement in which VoiceGlo licensed Sprint's VoP patents.

20.     In 2008, Sprint again sued to enforce patents from its VOP portfolio in additional lawsuits against companies engaging in the unauthorized use of Sprint's VoP technology:  *Sprint Communications Co. L.P. v. Paetec Holding Corp. et al.*, Case No. 08-cv-2044-JWL/GLR (D. Kan.), *Sprint Communications Co. L.P. v. Broadvox Holdings, LLC et al.*, Case No. 08-cv-2045-JWL/DJW (D. Kan.); *Sprint Communications Co. L.P. v. Big River Telephone Co., LLC*, Case No. 08-cv-2046-JWL/DJW (D. Kan.), and *Sprint Communications Co. L.P. v. Nuvox, Inc. et al.*, Case No. 08-cv-2047-JWL/JPO (D. Kan.).   By late 2009, Sprint had entered settlement agreements resolving these lawsuits and, as a result, a number of additional companies licensed patents from Sprint's VoP portfolio.

21.     During this same time frame, Sprint continued to derive substantial revenues from providing numerous cable companies, including Time Warner Cable, with a network backbone to carry voice traffic to support those companies' digital home telephone offerings, which use packet networks coupled with the PSTN.

**The Patents-In-Suit**

22.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,343,084 ("the '084 patent") entitled "Broadband Telecommunications

System," which duly and legally issued in the name of Joseph Michael Christie on January 29, 2002.  A copy of the '084 patent is attached to the Complaint as Exhibit A.

23.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,633,561 ("the '3,561 patent") entitled "Method, System and Apparatus for Telecommunications Control," which duly and legally issued in the name of Joseph Michael Christie on October 14, 2003.  A copy of the '3,561 patent is attached to the Complaint as Exhibit B.

24.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,463,052 ("the '052 patent") entitled "Method, System and Apparatus for Telecommunications Control," which duly and legally issued in the name of Joseph Michael Christie on October 8, 2002.   A copy of the '052 patent is attached to the Complaint as Exhibit C.

25.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,452,932 ("the '932 patent") entitled "Method, System and Apparatus for Telecommunications Control," which duly and legally issued in the name of Joseph Michael Christie on September 17, 2002.   A copy of the '932 patent is attached to the Complaint as Exhibit D.

26.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,473,429 ("the '429 patent") entitled "Broadband Telecommunications System," which duly and legally issued in the name of Joseph Michael Christie on October 29, 2002.  A copy of the '429 patent is attached to the Complaint as Exhibit E.

27.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,298,064 ("the '064 patent") entitled "Broadband Telecommunications

System," which duly and legally issued in the name of Joseph Michael Christie on October 2, 2001.  A copy of the '064 patent is attached to the Complaint as Exhibit F.

28.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,262,992 ("the '992 patent") entitled "System and Method for Transporting a Call in a Telecommunication Network," which duly and legally issued in the names of Tracy Lee Nelson, William Lyle Wiley, and Albert Daniel DuRee on July 17, 2001.  A copy of the '992 patent is attached to the Complaint as Exhibit G.

29.      Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,330,224 ("the '224 patent") entitled "System and Method for Providing Enhanced Services for a Telecommunication Call," which duly and legally issued in the names of Joseph Michael Christie, Joseph S. Christie, and Tracy Lee Nelson on December 11, 2001.  A copy of the '224 patent is attached to the Complaint as Exhibit H.

30.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,563,918 ("the '918 patent") entitled "Telecommunications System Architecture for Connecting a Call," which duly and legally issued in the names of Tracy Lee Nelson, William Lyle Wiley, Royal Dean Howell, Michael Joseph Gardner, and Albert Daniel DuRee on May 13, 2003.  A copy of the '918 patent is attached to the Complaint as Exhibit I.

31.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,639,912 ("the '912 patent") entitled "Number Portability in a Communications System," which duly and legally issued in the names of Joseph Michael Christie, Joseph S. Christie, Jean M. Christie, Michael Joseph Gardner, Albert Daniel DuRee, William Lyle Wiley, and Tracy Lee Nelson on October 28, 2003.  A copy of the '912 patent is attached to the Complaint as Exhibit J.

32.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,697,340 ("the '340 patent") entitled "System and Method for Providing Enhanced Services for a Telecommunication Call," which duly and legally issued in the names of Joseph Michael Christie, Joseph S. Christie, Jean M. Christie, and Tracy Lee Nelson on February 24, 2004.  A copy of the '340 patent is attached to the Complaint as Exhibit K.

33.     Plaintiff Sprint is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,286,561 ("the '6,561 patent") entitled "Method System and Apparatus for Telecommunications Control," which duly and legally issued in the name of Joseph Michael Christie on October 23, 2007.  A copy of the '6,561 patent is attached to the Complaint as Exhibit L.

34.     The patents identified in paragraphs 22–33 and attached at Exhibits A–L are herein collectively referred to as "Sprint's Patents."   Sprint's Patents are a part of Sprint's revolutionary VoP patent portfolio.

**Comcast**

35.     Upon information and belief, Comcast is the largest cable operator in the United States, providing cable television, broadband Internet, and telephone service to both residential and commercial customers.

36.     Upon information and belief, Comcast has made, used, offered to sell, and/or sold, and continues to make, use, offer to sell, and/or sell broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, without Sprint's permission.

37.     Upon information and belief, within this Judicial District, Comcast, without Sprint's permission, has made, used, offered to sell, and/or sold, and continues to make, use, offer to sell, and/or sell broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe Sprint's Patents.

## COUNT 1: PATENT INFRINGEMENT

### Infringement of the '084 Patent

38.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–37 above.

39.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '084 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '084 patent.

40.     Upon information and belief, Comcast's infringement of the '084 patent will continue unless enjoined by this Court.

41.     As a direct and proximate consequence of Comcast's infringement of the '084 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 2: PATENT INFRINGEMENT

### Infringement of the '3,561 Patent

42.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–41 above.

43.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '3,561 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '3,561 patent.

44.     Upon information and belief, Comcast's infringement of the '3,561 patent will continue unless enjoined by this Court.

45.     As a direct and proximate consequence of Comcast's infringement of the '3,561 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

**COUNT 3: PATENT INFRINGEMENT**

**Infringement of the '052 Patent**

46.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–45 above.

47.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '052 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '052 patent.

48.     Upon information and belief, Comcast's infringement of the '052 patent will continue unless enjoined by this Court.

49.     As a direct and proximate consequence of Comcast's infringement of the '052 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 4: PATENT INFRINGEMENT

### Infringement of the '932 Patent

50.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–49 above.

51.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '932 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '932 patent.

52.     Upon information and belief, Comcast's infringement of the '932 patent will continue unless enjoined by this Court.

53.     As a direct and proximate consequence of Comcast's infringement of the '932 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 5: PATENT INFRINGEMENT

### Infringement of the '429 Patent

54.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–53 above.

55.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '429 patent by making, using,  selling, offering for sale, contributing to

the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '429 patent.

56.     Upon information and belief, Comcast's infringement of the '429 patent will continue unless enjoined by this Court.

57.     As a direct and proximate consequence of Comcast's infringement of the '429 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 6: PATENT INFRINGEMENT

### Infringement of the '064 Patent

58.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–57 above.

59.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '064 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '064 patent.

60.     Upon information and belief, Comcast's infringement of the '064 patent will continue unless enjoined by this Court.

61.     As a direct and proximate consequence of Comcast's infringement of the '064 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 7: PATENT INFRINGEMENT

### Infringement of the '992 patent

62.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–61 above.

63.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '992 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '992 patent.

64.     Upon information and belief, Comcast's infringement of the '992 patent will continue unless enjoined by this Court.

65.     As a direct and proximate consequence of Comcast's infringement of the '992 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 8: PATENT INFRINGEMENT

### Infringement of the '224 patent

66.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–65 above.

67.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '224 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '224 patent.

68.     Upon information and belief, Comcast's infringement of the '224 patent will continue unless enjoined by this Court.

69.     As a direct and proximate consequence of Comcast's infringement of the '224 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 9: PATENT INFRINGEMENT

### Infringement of the '918 patent

70.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–69 above.

71.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '918 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '918 patent.

72.     Upon information and belief, Comcast's infringement of the '918 patent will continue unless enjoined by this Court.

73.     As a direct and proximate consequence of Comcast's infringement of the '918 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 10: PATENT INFRINGEMENT

### Infringement of the '912 patent

74.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–73 above.

75.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '912 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '912 patent.

76.     Upon information and belief, Comcast's infringement of the '912 patent will continue unless enjoined by this Court.

77.     As a direct and proximate consequence of Comcast's infringement of the '912 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 11: PATENT INFRINGEMENT

### Infringement of the '340 patent

78.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–77 above.

79.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '340 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '340 patent.

80.     Upon information and belief, Comcast's infringement of the '340 patent will continue unless enjoined by this Court.

81.     As a direct and proximate consequence of Comcast's infringement of the '340 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## COUNT 12: PATENT INFRINGEMENT

### Infringement of the '6,561 patent

82.     Sprint realleges and incorporates by reference the allegations set forth in paragraphs 1–81 above.

83.     Upon information and belief, Comcast has been, and currently is, directly and indirectly infringing the '6,561 patent by making, using, selling, offering for sale, contributing to the use of by others, and/or inducing others to use broadband and/or packet-based telephony products and/or services, including Digital Voice and XFinity Voice, that infringe the '6,561 patent.

84.     Upon information and belief, Comcast's infringement of the '6,561 patent will continue unless enjoined by this Court.

85.     As a direct and proximate consequence of Comcast's infringement of the '6,561 patent, Sprint has suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Sprint is entitled to relief.

## PRAYER FOR RELIEF

Wherefore, Sprint requests entry of judgment in its favor and against Comcast as follows:

A.      Enter judgment that Comcast has infringed Sprint's Patents;

B.      Enter judgment that Comcast has induced infringement of Sprint's Patents;

C.      Enter judgment that Comcast has contributed to infringement of Sprint's Patents;

D.      Enter a permanent injunction restraining and enjoining Comcast, and their respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Comcast who receive actual notice of the order by personal service or otherwise, from any further sales or use of their infringing products and/or services and any other infringement of Sprint's Patents, whether direct or indirect;

E.      For damages to compensate Sprint for Comcast's infringement of Sprint's Patents pursuant to 35 U.S.C. § 284;

F.      For enhanced damages, pursuant to 35 U.S.C. § 284;

G.      For an award of pre-judgment and post-judgment interest and costs to Sprint in accordance with 35 U.S.C. § 284;

H.      For an award of Sprint's reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

I.      For such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Sprint respectfully demands a trial by jury on all claims and issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Sprint hereby designates Kansas City, Kansas as place of trial pursuant to Local Rule 40.2.

Dated:  December 19, 2011                   Respectfully Submitted,

                                           SHOOK, HARDY & BACON L.L.P.

                                           _____
                                           B. Trent Webb, KS Bar No. 15965
                                           Eric A. Buresh, KS Bar No. 19895
                                           Adam P. Seitz, KS Bar No. 21059
                                           Jason R. Mudd, KS USDC Bar No. 78267
                                           Paul R. Hart, *pro hac vice* to be filed
                                           2555 Grand Boulevard
                                           Kansas City, Missouri 64108-2613
                                           816-474-6550 Telephone
                                           816-421-5547 Facsimile

                                           ***Attorneys For Plaintiff Sprint
                                           Communications Company L.P.***