IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | **CONSOLIDATED CASES** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2684-JWL |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | | |
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2685-JWL |
| | ) | |
| CABLE ONE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | | |
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2686-JWL |
| | ) | |
| TIME WARNER CABLE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>ORDER</u>**

11-2684-JWL-153.wpd

These consolidated cases involve claims by Sprint Communications Company, L.P. that defendants are infringing twelve patents related to broadband and packet-based telephony products.  Defendants have filed a motion to compel Sprint to produce documents on four topics about which Sprint in-house attorneys testified in a separate patent-infringement lawsuit brought by Sprint against Vonage Holdings Corp. and Vonage America, Inc. (collectively, "Vonage") **(ECF doc. 153)**.  In response to defendants' document requests seeking these documents, Sprint objected on the grounds that the documents were protected from disclosure by either the attorney-client privilege or the work-product doctrine. Defendants argue that to the extent the documents were once privileged, Sprint waived that privilege via the testimony in the *Vonage* trial.  Because the undersigned U.S. Magistrate Judge, James P. O'Hara, finds that Sprint's response to the document requests waived any objection Sprint had to producing documents on two of the topics, the motion is granted in part.  But because Sprint's objections were proper as to two of the topics, the motion also is denied in part.

## I.     Background

In September 2007, U.S. District Judge John W. Lungstrum presided over a jury trial in the case of *Sprint Communications Company LP v. Vonage Holdings Corp.*,[1] involving claims by Sprint that Vonage had infringed patents from two related families of patents issued to named inventor Joseph Christie (the "Christie Patents").  During the *Vonage* trial,

_____

[1]Case No. 05-2433.

Sprint called two in-house attorneys, Michael Setter and Harley Ball, to testify about Christie's inventions, Sprint's evaluation of their patentability, Sprint's patent applications, and Sprint's decision to sue Vonage for infringement. Sprint's trial counsel, B. Trent Webb, also discussed these topics in his opening statement and closing argument.

In these consolidated cases, seven Christie Patents are at issue, including five that were at issue in *Vonage*.[2]  On May 10, 2013, defendants served their First Set of Common Requests for Production to Sprint. A number of the specific requests sought documents relating to the subject matter of Sprint's disclosures during the *Vonage* trial.[3]  Defendants accurately characterize these requests as seeking information related to the following four topics: "(1) assessments by Sprint's legal department of the patentability of Mr. Christie's purported inventions; (2) the preparation or prosecution of patent applications for such inventions (including instructions and other communications of Sprint's legal department relating thereto); (3) communications and analysis of Sprint's legal department concerning its pre-suit investigation into whether Vonage infringed the patents concerning Mr. Christie's purported inventions; and (4) communications among Sprint's legal department and its executives regarding authorization to contact Vonage about alleged infringement of such

---

[2]The five patents asserted both here and in *Vonage* are U.S. patent numbers 6,633,561, 6,463,052, 6,452,932, 6,473,429, and 6,298,064. The two additional Christie Patents asserted here are U.S. patent numbers 6,343,084 and 7,286,561. Sprint also asserts infringement by defendants of U.S. patent numbers 6,262,992, 6,330,224, 6,563,918, 6,697,340, and 6,639,912.

[3]ECF doc. 155-3, Request Nos. 18–20, 23, 43, 45.

patents and to sue Vonage for such alleged infringement."[4]

Sprint responded to the document requests on June 13, 2013, asserting objections on several grounds, including (as relevant here) that the information sought was "protected from discovery by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity."[5]  But with respect to three requests which sought information on topics one and two above, Sprint stated that it would produce non-privileged and responsive documents "subject to and without waiving" its objections.[6]

Defendants now move the court to compel Sprint to produce documents related to the four topics at issue, asserting that Sprint's presentation in the *Vonage* trial waived any attorney-client or work-product protection to which the documents were otherwise entitled.

## II.     Waiver of Discovery Objections

Defendants' document requests numbered 18–20 sought documents that relate to Sprint's meetings with Christie, Sprint's assessment of the patentability (including the search for and analysis of prior art) of purported inventions in the Sprint Patent Family, and Sprint's prosecution of patent applications for Christie's inventions (i.e., topics one and two).  As noted above, Sprint objected to each of these requests on the basis that they sought privileged information.  Despite its objections, however, for each of these requests Sprint stated,

---

[4]ECF doc. 154 at 6–7.

[5]ECF doc. 155-6.

[6]*Id.* at responses to Request Nos. 18–20.

"Subject to and without waiver of the foregoing objections . . . Sprint will produce non-privileged responsive documents within its custody and control after a reasonably diligent search relating to the non-privileged facts discussed during the Sprint v. Vonage trial (if any)."[7]  This purported reservation of rights by Sprint was improper and ultimately has the effect of waiving Sprint's objections to these specific document requests.

The court recognizes that it has become common practice among many practitioners to respond to discovery requests by asserting objections and then answering "subject to" or "without waiving" their objections.  This practice, however, is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure.  The court joins a growing number of federal district courts in concluding that such conditional answers are invalid and unsustainable.

In this district, U.S. Magistrate Judge David J. Waxse explained the confusing nature of conditional answers.  In *Pro Fit Management, Inc. v. Lady of America Franchise Corp.*, the defendant asserted privilege objections to the plaintiff's document requests, but then stated, subject to its objections, it would produce responsive, non-privileged documents.[8]  The plaintiff filed a motion to compel, arguing that such conditional responses  "obscure[] potentially discoverable information" and leave the requesting party "with reason to believe that important documents have not been produced without a mechanism to compel

---

[7]*Id.*

[8]No. 08-2662, 2011 WL 939226, at *7–9 (D. Kan. Feb. 25, 2011).

production."[9]  Judge Waxse agreed with the plaintiff, ruling that when a party responds that it is producing documents "subject to and without waiving its objections," the requesting party "is left guessing as to whether [the producing party] has produced all documents, or only produced some documents and withheld others on the basis of privilege."[10]  Federal district courts in Florida have reached the same conclusion.  For example, in *Consumer Electronics Association v. Compras and Buys Magazine, Inc.,* the court held that objections followed by an answer "preserve[] nothing and serve[] only to waste the time and resources of both the Parties and the Court."[11]  The court reasoned that "such practice leaves the requesting Party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered."[12]

In addition to their failure to convey any information, conditional responses are not permitted by the Federal Rules of Civil Procedure.  Rule 34(b)(2) permits only three responses to a request for production of documents: produce the documents as requested,

---

[9]*Id.* at *8.

[10]*Id.* at *9.  *See also Strasburg-Jarvis, Inc. v. Radiant Sys., Inc.*, No. 06-2552, 2009 WL 129361, at *5–6 (D. Kan. Jan. 20, 2009) (holding that an interrogatory response stating, "subject to the foregoing objections," the responding party "has or will produce the documents in its possession," was insufficient because "it is unclear whether [the producing party] has fully complied with this interrogatory").

[11]No. 08-21085, 2008 WL 4327253, at *2 (S.D. Fla. Sept. 18, 2008); *see also Mann v. Island Resorts Dev., Inc.*, No. 3:08cv297/RS/EMT, 2009 WL 6409113, at *2–3 (N.D. Fla. Feb. 21, 2009) (holding objection waived where party answered in spite of objection).

[12]*Consumer Elec. Ass'n,* 2008 WL 4327253, at *2.

"state an objection to the request" as a whole, or state an "objection to part of [the] request" *provided* that the response specifies the part objected to and responds to the non-objectionable portion.[13]  "Objecting but answering subject to the objection is not one of the allowed choices under the Federal Rules."[14]  Thus, no objections may be "reserved" under the rules; "they are either raised or they are waived."[15]

Finally, courts have recognized that conditional responses violate common sense.  In *Haeger v. Goodyear Tire and Rubber Co.*, U.S. District Judge Roslyn O. Silver of the District of Arizona concluded that if Rule 34 were read to allow parties to combine objections with a partial response that does not specify whether other potentially responsive material is being withheld, "discovery would break down in practically every case."[16]  Judge Silver explained,

> A litigant with any viable objection to a discovery request would make that objection and then produce whatever portion of otherwise responsive

---

[13]*Haeger v. Goodyear Tire & Rubber Co.*, 906 F. Supp. 2d 938, 976 (D. Ariz. 2012) (quoting Fed. R. Civ. P. 34(b)(2)).

[14]*Tardif v. People for the Ethical Treatment of Animals,* No. 2:09-cv-537-FtM-29SPC, 2011 WL 1627165, at *1 (M.D. Fla. April 29, 2011); *see also C.T. v. Liberal Sch. Dist.*, Nos. 06-2093, 06-2360, 2008 WL 394217, at *5 (D. Kan. Feb. 11, 2008) (holding that response listing various objections but stating that documents would be produced "without waiving said objections" was improper because it "is neither an objection, nor an adequate identification of the responsive document"); *Haeger*, 906 F. Supp. 2d at 976 ("What Goodyear could not do, but what it did, was combine its objections with a partial response without any indication that the response was, in fact, partial.").

[15]*Tardif*, 2011 WL 1627165, at *2.

[16]906 F. Supp. 2d at 977.

documents it wished to produce.  Under this approach, a party would have no obligation to indicate that its production was partial and the opposing party would have no way of knowing the production was partial.  Absent an indication of what, exactly, the responding party was objecting to, courts would have no way of assessing the propriety of the objections.  Instead, courts would be flooded with motions to compel by litigants seeking to confirm that undisclosed responsive documents did not exist.  And courts would then be forced to ask counsel, over and over again, "Do other documents exist?"[17]

Similarly, though more succinctly, the *Tardif* court concluded, "answering subject to an objection lacks any rational basis.  There is either a sustainable objection to a question or request or there is not."[18]

For these reasons, the court follows its sister courts in holding, "whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands."[19]  Applying this rule, Sprint's conditional answers to defendants' document requests numbered 18–20 waived any objections Sprint had to those requests.[20]  Sprint's objections to the requests, accordingly, are overruled, and defendants' motion to compel is granted to the extent that it seeks responses to these requests.  Sprint is ordered to produce information related to (1) assessments by Sprint's legal department of the patentability of the Christie Inventions, and (2) the preparation or prosecution of patent applications for such inventions.

---

[17]*Id.*

[18]*Tardif*, 2011 WL 1627165, at *2.

[19]*Estridge v. Target Corp.*, No. 11-61490, 2012 WL 527051, at *2 (S.D. Fla. Feb. 16, 2012) (quoting *Tardif*, 2011 WL 1627165, at *2).

[20]The same can be said of Sprint's conditional response to Request No. 51, which defendants assert also seeks information on the first two topics.  *See* ECF doc. 154 at 11 n.8.

**III.**     **Applicability of the Attorney-Client Privilege and Work-Product Doctrine**

Defendants' motion to compel also asks the court to compel Sprint to produce documents responsive to Request No. 43 to the extent that it seeks documents that relate to communications and analysis by Sprint's legal department concerning Sprint's investigation into whether Vonage infringed the Christie Patents (topic three); and documents responsive to Request No. 45 to the extent that it seeks documents that relate to communications among Sprint's legal department and executives regarding authorization to contact Vonage about alleged infringement of the Christie Patents and to sue Vonage for such alleged infringement (topic four). As it did in response to document Request Nos. 18–20, Sprint objected to Request Nos. 43 and 45 on the basis that the requests sought information protected from discovery by the attorney-client privilege and/or the work-product doctrine. However, Sprint did not waive its objections in Request Nos. 43 and 45 by conditionally answering this discovery. The court therefore evaluates these objections on their merits.

    **A.**     **Legal Standards**

Because this litigation arises out of a federal statutory scheme, federal law governs the application of the attorney-client privilege and work-product doctrine.[21] Moreover, because these privilege issues are deemed "procedural matters that are not unique to patent issues," the law of the circuit in which this court sits (as opposed to Federal Circuit law)

---

[21]Fed. R. Evid. 501; *New Jersey v. Sprint Corp.,* 258 F.R.D. 421, 425 (D. Kan. 2009).

applies.[22]

Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[23]  The party asserting the privilege bears the burden of establishing that the elements are met.[24]

Defendants argue that the eighth element, absence of waiver, has not been established here.  The burden of showing that the attorney-client privilege has not been waived remains with Sprint, the party claiming the privilege.[25]  "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[26]  However, revealing the general topic of discussion between an attorney and client does not waive the privilege, unless the

---

[22]*In re Pioneer H-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001).

[23]*New Jersey v. Sprint*, 258 F.R.D. at 425.

[24]*Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 618 (D. Kan. 2001).

[25]*New Jersey v. Sprint,* 258 F.R.D. at 426; *Lewis*, 203 F.R.D. at 621.

[26]*In re Quest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)).

revelation also reveals the substance of a protected communication.[27]   Likewise,
"[u]nderlying facts are not protected by the privilege" and disclosing them does not waive
the privilege over protected communications.[28]

Like the attorney-client privilege, federal law governs the applicability of the work-
product doctrine in this case.[29]   For documents to be protected under this doctrine, the party
claiming the protection must demonstrate that "(1) the materials sought to be protected are
documents or tangible things; (2) they were prepared in anticipation of litigation or for trial;
and (3) they were prepared by or for a party or a representative of that party."[30]

"The privilege derived from the work-product doctrine is not absolute," however, and
may be waived.[31]   The Supreme Court has recognized that work-product protection is waived
at trial when a party elects to call an attorney or his agent as a witness and "attempts to make
a testimonial use" of work-product materials.[32]   In that instance, the party waives the

---

[27]*Williams v. Sprint/United Mgmt. Co.*, No, 03-2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006).

[28]*Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981)).

[29]*See Western Res., Inc. v. Union Pacific R.R. Co.*, No. 00-2043, 2002 WL 181494, at *4 n.4 (D. Kan. Jan. 31, 2002) (citing *Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 139 (D. Kan. 1996)).

[30]*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007) (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000)).

[31]*United States v. Nobles*, 422 U.S. 225, 239 (1975).

[32]*Id.* at 240 n.14.

privilege "with respect to matters covered in his testimony."[33]  In contrast to the attorney-client privilege, "the party asserting waiver of work product immunity, rather than the party asserting the work product protection, [has] the burden to establish waiver."[34]

In this case, defendants assert waiver of attorney-client privilege and work-product protection not only as to the actual information disclosed by Sprint during the *Vonage* trial, but also to undisclosed information on the same subject matters.[35]  When a subject-matter waiver has occurred, the waiver extends to subsequent litigation, even if that subsequent litigation involves a new adversary.[36]

---

[33]*Id.* at 239.

[34]*Western Res.*, 2002 WL 181494, at *4; *see also ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135, 2007 WL 4239453, at *3 (D. Kan. Nov. 30, 2007).

[35]*See* Fed. R. Evid. 502. Under Rule 502(a), subject-matter waiver is limited to situations in which intentionally disclosed communication or information "ought in fairness . . . be considered together" with undisclosed communication or information concerning the same subject matter.
Congress enacted Rule 502 on September 19, 2008, and provided that "[t]he amendments made by this Act shall apply in all proceedings commenced after the date of enactment of this Act and, insofar as is just and practicable, in all proceedings pending on such date of enactment." Pub.L. No. 110-322 § 1(c).  The *Vonage* trial occurred in 2007, but all parties presume Rule 502's application.  Indeed, Congress noted that Rule 502(a) "does not alter the substantive law regarding when a party's strategic use in litigation of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter, so that the information being used can be fairly considered in context." Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence, 154 Cong. Rec. H7818-H7819 (Sept. 8, 2008).

[36]*See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (holding that when the plaintiff's patent attorney testified in an earlier trial about "his state of mind, knowledge of prior art, and communications with his client," he waived the attorney-client privilege with respect to "all communications pertaining to the subject matter of the

### B.     Analysis

Defendants argue that during the *Vonage* trial, Sprint selectively disclosed its internal legal communications and analysis to impress upon the jury the merits of its claims that Vonage was infringing Sprint's patents.  Defendants assert that by revealing its attorneys' communications and analyses, Sprint waived privilege as to the subject matters it placed at issue: Sprint's investigation into whether Vonage infringed the Christie Patents (topic three) and Sprint's decision to contact and sue Vonage (topic four).  Defendants argue that they need access to information on these subject matters so that they may challenge the narratives Sprint presented in *Vonage* and has indicated it will present in these cases.  According to defendants, all information related to these subject matters must in fairness be considered together.  The court will separately consider the disclosures Sprint made as to each of these subject matters.

#### *Information about Sprint's Investigation of Vonage*

Defendants take issue with the following testimony and statements of Sprint's counsel related to Sprint's investigation of whether Vonage infringed the Christie Patents:

- In his opening statement, Mr. Webb stated that Mr. Ball began an investigation into Vonage and that the Sprint legal department "gathered all the material they could fin[d] about Vonage and evaluated [it]."  Mr. Webb stated that Sprint's legal department "looked at those 80 patents in view of what Vonage was doing and they

---

communications"); *Info-Hold, Inc. v. Trusonic, Inc.*, No. 1:06cv543, 2008 WL 2949399, at *5 (S.D. Ohio July 30, 2008) (finding subject-matter waiver where the plaintiff's Fed. R. Civ. P. 30(b) witness testified in an unrelated patent-infringement lawsuit about letters from counsel).

believed it infringed 43 patents" and an outside law firm "agreed."

• Mr. Ball testified that once he suspected Vonage of having voice over packet technology, he began an investigation into whether Vonage was using Sprint's purported technology.  Mr. Ball testified that this investigation led him to conclude that Vonage was infringing "a number of Sprint's patents."

• Mr. Ball testified that Sprint hired two law firms to research Vonage's architecture. Sprint's legal team then "walked through" with the law firms "the Vonage architectures that we believed were being used and the specific claims and particular claims in looking at each element of those limitations of the claims based on what we believed that Vonage was doing."

Defendants argue that these disclosures "revealed substantive attorney communications and analysis."[37]  The court disagrees.  Instead, the court finds that these disclosures revealed facts, general topics of attorney-client discussions, and legal conclusions.

First, Sprint's revelations that (1) Sprint's legal department investigated Vonage, (2) gathered information about Vonage's architecture, and (3) hired outside law firms to research and evaluate Vonage's architecture simply cannot be classified as anything other than facts. As stated above, "Underlying facts are not protected by the privilege."[38]  Similarly, neither the acts or services performed by an attorney during the course of his representation, nor the scope of representation, are within the attorney-client privilege because they are not

---

[37]ECF doc. 154 at 26.

[38]*Williams*, 2006 WL 1867478, at *10 (citing *Upjohn*, 449 U.S. at 396).

"communications."[39]

Second, Mr. Ball's testimony that Sprint's legal team "walked though" with outside counsel Vonage's architecture and Sprint's claims reveals nothing more than the topic of Sprint's discussions with its attorneys. "Revealing the general topic of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication."[40]   Mr. Ball never testified to any specific communications that were exchanged nor any legal advice that Sprint might have been given. The revelation of the general discussion topic between Sprint and its attorneys will not be held to reveal protected communications.[41]

Third, legal conclusions by Mr. Ball and Sprint's outside legal counsel that Vonage was infringing Sprint's patents cannot be deemed privileged.   Defendants assert that

---

[39]*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005).

[40]*New Jersey v. Sprint*, 258 F.R.D. at 426.  *See also United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989) (holding that the attorney-client privilege is waived only when the substance of a privileged communication is voluntarily disclosed to a third party); *Williams*, 2006 WL 1867478, at *10 (holding that for testimony to constitute a waiver of the attorney-client privilege, it must disclose the substance of privileged communications);  *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 675 (holding that the subject matter of meetings with an attorney is not protected by the attorney-client privilege).

[41]*See Williams*, 2006 WL 1867478, at *10 (holding that testimony about defendant's directive to counsel to "run the adverse impact at different levels" did not waive the attorney-client privilege); *New Jersey v. Sprint*, 258 F.R.D. at 427–28 (holding that testimony stating that legal counsel advised the defendant that it need not publicly disclose tax shelter issues did not waive the attorney-client privilege because it did not disclose the substance of the legal advice received).

testimony about these conclusions reveal the substance of communications between Sprint and its counsel: that Vonage infringed Sprint's patents.  But the court agrees with Sprint that the "ultimate legal conclusions of a party are always implicated at a trial, because it is those conclusions that lead parties to file and pursue lawsuits."[42]  The court does not believe that this is the type of substantive communication that privilege protects.  Sprint did not reveal its attorney's reasoning and analysis behind these conclusions (which might be protected by the attorney-client privilege or work-product doctrine).[43]  Defendants have cited no case holding that disclosure of a legal conclusion at trial waives privilege as to specific communications about the legal conclusions.

In addition to defendants' waiver arguments based on Sprint's alleged partial disclosure of protected information, defendants argue that Sprint implicitly waived the attorney-client privilege by placing privileged communications about its investigation into Vonage "at issue."[44]  Under the implied waiver doctrine recognized by this court, a party waives the attorney-client privilege when the party places information protected by the privilege "in issue," and where allowing the privilege to protect against disclosure of the

---

[42]ECF doc. 169 at 9.

[43]*See New Jersey v. Sprint*, 258 F.R.D. at 427–28 (holding that testimony stating that legal counsel advised the defendant that it need not publicly disclose tax shelter issues did not waive the attorney-client privilege because it did not disclose the substance of the legal advice received).

[44]ECF doc. 154 at 26.

information would be "manifestly unfair to the opposing party."[45]   Waiver will not be triggered unless a party indicates an intent to "assert the privilege in aid of" or "invoke the privilege in furtherance of" a claim or defense in the case.[46]   Defendants argue that during the *Vonage* trial, Sprint placed at issue its attorney communications and analysis about possible infringement by Vonage.

The court finds this argument tenuous at this point in the instant litigation.   First, defendants have not demonstrated that implicit waiver could have been found in *Vonage*, even if it had been asserted.   Specifically, defendants have not demonstrated that Sprint relied on the advice or communications of its counsel to prove a claim or justify certain conduct on Sprint's part,[47] nor that if Sprint had so done, it was "manifestly unfair" to Vonage.[48] Second, defendants have not  presented any support for their inferred argument that implicit waiver (in contrast to subject matter waiver based on explicit waiver) in one case can carry over to a subsequent case.[49]   Given the fairness consideration at issue in implicit waiver

---

[45]*Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1104–05 (D. Kan. 2006) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)); *New Jersey v. Sprint*, 258 F.R.D. at 430.

[46]*Williams*, 464 F. Supp. 2d at 1107 (quoting *Hearn*, 68 F.R.D. at 581).

[47]*See New Jersey v. Sprint*, 258 F.R.D. at 430 ("Further, the testimony of the witness did not indicate that the defendant intended to use advice of counsel to justify any conduct on its part.")

[48]*See Williams*, 464 F. Supp. 2d at 1114 (quoting *Hearn*, 68 F.R.D. at 581).

[49]Indeed, defendants only assert that "*[i]ntentional* disclosures of privileged or protected information generally results in a subject-matter waiver in subsequent litigation."

situations—i.e., manifest unfairness to the opposing party—the court is not persuaded that implicit waiver automatically carries over to subsequent cases.  Finally, defendants have not demonstrated that Sprint plans to rely on the advice that counsel gave it with respect to possible infringement *by Vonage* to prove a claim *in this case*. The court will follow the approach taken in *Williams* and *New Jersey v. Sprint* by allowing defendants to revisit this issue should Sprint "affirmatively and voluntarily inject the reliance on counsel issue at trial or in subsequent briefing" in *this* action.[50]

The court concludes that the information Sprint disclosed during the *Vonage* trial about its investigation of Vonage (topic 3) did not reveal any privileged communication. Revealing non-privileged information, of course, does not waive protection accorded privileged information.  Thus, to the extent Sprint asserts a privilege objection to producing information responsive to document Request No. 43, that objection is sustained.

### *Information about Sprint's Decision to Contact and Sue Vonage*

Defendants take issue with the following testimony and statements of Sprint's counsel related to Sprint's decision to contact and sue Vonage:

- Mr. Webb stated in his opening statement that Mr. Ball talked to Sprint executives about his concern that Vonage infringed the Christie Patents to obtain authorization to contact Vonage.

- Mr. Ball testified that after he received the infringement analysis from the outside law firms, he "began the process of talking with various members of [Sprint's] senior

---

ECF doc. 154 at 17 (emphasis added).

[50]*Williams,* 464 F. Supp. 2d at 1115 n.16; *New Jersey v. Sprint*, 258 F.R.D. at 433.

management about the situation and discussing those issues with them and because, . . . sending a letter to somebody else in the telecommunications industry in essence alleging . . . that they are using your patents is considered a serious allegation within Sprint and so it required a number of levels for [Sprint] to even clear that path to even send out the first letter[,] so I started heading down that path and obtained approval."

• Sprint's counsel introduced five letters sent from Sprint to Vonage alleging infringement, eliciting testimony from Mr. Ball regarding their contents, his authorization to send each letter, and his receipt of authorization to file the lawsuit.

• In his closing argument, Mr. Webb noted that Sprint had never filed a patent case before and stated, "It never would have filed this unless [it] believed it was a strong case [and the] right thing to do[.] [B]efore it filed it went through a detailed thorough investigat[ion] process twice with outside law firms and with internal people at Sprint[.]  [T]hey wanted to make sure they got it[] right."

Defendants argue that these disclosures revealed "communications between Mr. Ball and Sprint executives."[51]  According to defendants, Mr. Ball's testimony "not only revealed that these meetings occurred, it also revealed the substance of these meetings—Mr. Ball's explanation of his understanding of Vonage's infringement based on his analysis of the information from outside law firms—and the culminating communications to Mr. Ball of authorization to (1) send a letter to Vonage alleging that it was using Sprint's Christie Patents, and (2) file a lawsuit against Vonage."[52]

Again, however, the court finds that defendants are over-stating the significance and extent of what Sprint actually disclosed regarding its internal communications about its decision to contact and sue Vonage.  Sprint revealed nothing more than the subject matters

---

[51]ECF doc. 154 at 27.

[52]*Id.*

of Mr. Ball's discussions with Sprint executives—specifically, Vonage's possible infringement of Sprint's patents and authorization to contact Vonage.  Because Sprint did not disclose the substance of the communications, Sprint did not waive attorney-client protection over the communications.[53]   While it could again be said that the subject matter of the communications necessarily reveals the legal conclusion reached by Mr. Ball and conveyed to his client (i.e., that Vonage infringed Sprint patents), defendants have presented no authority demonstrating that privilege is waived in this instance.[54]  Nor could the introduction of Sprint's letters to Vonage have waived the attorney-client privilege, as the letters were never privileged.[55]

The court concludes that the information Sprint disclosed during the *Vonage* trial about Mr. Ball's communications with Sprint executives regarding authorization to contact Vonage about alleged infringement and to sue Vonage for such alleged infringement (topic four) did not reveal any privileged communication.  As noted above, revealing non-privileged information does not waive protection accorded privileged information.  Thus, to the extent Sprint asserts a privilege objection to producing information responsive to document Request

---

[53]*See, e.g., New Jersey v. Sprint Corp.*, 258 F.R.D. at 426–28 (holding that testimony stating that company's board of directors discussed legal advice of counsel about two specific topics and then acted a certain way did not result in waiver of the attorney-client privilege because it did not reveal the substance of the legal advice).

[54]Indeed, the caselaw is to the contrary.  *See id.*

[55]*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 675 (holding that documents prepared by counsel submitted to a third party outside the attorney-client relationship "removes any cloak of privilege").

No. 45, that objection is sustained.

Finally, it bears mentioning that although both sides have set forth the standards for work-product protection and waiver, defendants have not made any specific arguments to show that Sprint made testimonial use of work-product materials during *Vonage* such that it waived work-product protection over documents and documents related to the same subject matter.[56]  Thus, the court need not further address the issue of work-product waiver.

IT IS THEREFORE ORDERED that defendants' motion to compel is granted in part and denied in part, as set forth herein.

Dated February 11, 2014, at Kansas City, Kansas.

  s/ James P. O'Hara           
James P. O'Hara
U.S. Magistrate Judge

---

[56]Defendants simply make conclusory statements about work-product waiver in a footnote of their reply brief.  ECF doc. 173 at 18 n.8.