IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | **CONSOLIDATED CASES** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2684-JWL |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2685-JWL |
| | ) | |
| CABLE ONE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2686-JWL |
| | ) | |
| TIME WARNER CABLE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

11-2684-JWL-192.wpd

These consolidated cases involve claims by Sprint Communications Company, L.P. that defendants are infringing twelve patents related to broadband and packet-based telephony products. Defendants filed a motion to compel Sprint to produce documents responsive to defendants' first set of common document requests **(ECF doc. 153)**. On February 11, 2014, the undersigned U.S. Magistrate Judge, James P. O'Hara, issued an order which held, in part, that Sprint waived its objections to certain document requests by conditionally answering the requests, i.e., by objecting to the requests but then answering "subject to and without waiving" its objections.[1] Sprint has filed a motion for reconsideration of that portion of the order **(ECF doc. 192).** The court remains unpersuaded that conditional discovery responses are ever appropriate. But the court will grant Sprint's motion for reconsideration in the unusual circumstances presented here. Having reviewed the substantive merits of Sprint's objections, the court finds them proper and denies defendants' motion to compel.

I.   **Relevant Background**

As discussed in the February 11, 2014 order (to which the reader is referred for the full background of this dispute), defendants' first set of common document requests to Sprint included requests seeking documents relating to the subject matter of Sprint's disclosures during a separate patent-infringement lawsuit brought by Sprint against Vonage Holdings Corp. and Vonage America, Inc. (collectively, "Vonage"). In *Sprint Communications*

---

[1]ECF doc. 177 at 4–8. Reported at 2014 WL 545544.

*Company LP v. Vonage Holdings Corp.*,[2] Sprint claimed that Vonage had infringed patents from two related families of patents issued to named inventor Joseph Christie (the "Christie Patents"). During the 2007 trial in *Vonage*, Sprint called two in-house attorneys, Michael Setter and Harley Ball, to testify about Mr. Christie's inventions, Sprint's evaluation of their patentability, Sprint's patent applications, and Sprint's decision to sue Vonage for infringement. Sprint's trial counsel, B. Trent Webb, also discussed these topics in his opening statement and closing argument.

In these consolidated cases, seven Christie Patents are at issue, including five that were at issue in *Vonage*. A number of defendants' document requests sought documents relating to the subject matter of Sprint's disclosures during the *Vonage* trial. Defendants accurately characterize these requests as seeking information related to the following four topics: "(1) assessments by Sprint's legal department of the patentability of Mr. Christie's purported inventions; (2) the preparation or prosecution of patent applications for such inventions (including instructions and other communications of Sprint's legal department relating thereto); (3) communications and analysis of Sprint's legal department concerning its pre-suit investigation into whether Vonage infringed the patents concerning Mr. Christie's purported inventions; and (4) communications among Sprint's legal department and its executives regarding authorization to contact Vonage about alleged infringement of such

---

[2]Case No. 05-2433.

patents and to sue Vonage for such alleged infringement."[3]

In Sprint's responses to the document requests, Sprint asserted objections on several grounds, including that the information sought was "protected from discovery by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity."[4] But in response to requests numbered 18–20, which sought information on topics one and two, Sprint went on to state that it would produce non-privileged and responsive documents "subject to and without waiving" its objections.[5] Defendants filed a motion to compel Sprint to produce documents responsive to their document requests, asserting that Sprint's presentation in the *Vonage* trial waived any attorney-client or work-product protection to which the documents were otherwise entitled.[6]

To the extent defendants' motion asked the court to compel Sprint to produce documents related to topics three and four, the court evaluated Sprint's objections on their merits and sustained them.[7] However, to the extent the motion asked the court to compel Sprint to produce documents related to topics one and two, the court concluded that Sprint's conditional responses to requests numbered 18–20 were improper and had the effect of

---

[3] ECF doc. 154 at 6–7.

[4] ECF doc. 155-6.

[5] *Id.* at responses to Request Nos. 18–20.

[6] ECF doc. 153.

[7] ECF doc. 177 at 13–21.

waiving any objection Sprint had to producing documents.[8] Thus, without reaching the substantive merits of Sprint's objections to these requests, the court ordered Sprint to "produce information related to (1) assessments by Sprint's legal department of the patentability of the Christie Inventions, and (2) the preparation or prosecution of patent applications for such inventions."[9]

Sprint's motion asks the court to reconsider the portion of the February 11, 2014 order which held that Sprint waived its objections to document requests numbered 18–20 by conditionally answering the requests. Defendants state in their response that they agree with Sprint that the holding, as applied, is "problematic."[10] Defendants submit that the finding of waiver based on Sprint's conditional responses "should be withdrawn and the issue of waiver as to these two subject areas reconsidered in view of the arguments presented by Defendants in support of the underlying motion to compel."[11]

## II. Reconsideration of the Waiver Holding

D. Kan. Rule 7.3(b) allows a party to seek reconsideration of a non-dispositive order "based on: (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." The decision whether to

---

[8]*Id.* at 4–8.

[9]*Id.* at 8.

[10]ECF doc. 195 at 2.

[11]*Id.*

grant or deny a motion for reconsideration is committed to the court's discretion.[12]

In its February 11, 2014 order, the court explained why the practice of responding to discovery requests by asserting objections and then answering "subject to" or "without waiving" the objections is confusing, unproductive, and in violation of federal discovery rules. The undersigned magistrate judge has reviewed the analysis and sources leading him to reach that conclusion, and remains convinced it's correct.

Further, the court also has come to believe that conditional responses violate Fed. R. Civ. P. 26(g). Rule 26(g)(1) requires attorneys and pro se parties to certify that discovery responses are consistent with the Federal Rules of Civil Procedure, "not imposed for any improper purpose," and "neither unreasonable nor unduly burdensome." The 1983 advisory committee comments to Rule 26(g) elaborate that the rule "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."[13] Rule 26(g)(3) requires courts to impose sanctions when the rule is violated without substantial justification.

Nevertheless, the unusual set of facts presented here warrant relief. That is, Sprint has persuaded the undersigned, that if he had known all the facts underlying Sprint's discovery

---

[12] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235–36 (10th Cir. 2001).

[13] *See also Tomlinson v. Combined Underwriters Life Ins., Co.*, No. 08-259, 2008 WL 4601578, at *1 (N.D. Okla. Oct. 16, 2008) (holding that discovery responses provided "subject to" boilerplate objections "come close to violating the requirement of Fed. R. Civ. P. 26(g)(1)(B) that every objection is warranted by existing law or a nonfrivolous legal argument and not interposed for delay").

responses—the undersigned acknowledges that he reached his ruling without asking the parties to brief this issue—he would have found that no party in this case was confused or put out by Sprint's responses.

Each of Sprint's responses to requests numbered 18–20 contained a number of boilerplate objections (e.g., vague, overbroad, unduly burdensome, privileged) but concluded with the statement, "[s]ubject to and without waiver of the foregoing objections . . . Sprint will produce non-privileged responsive documents within its custody and control." This statement, without context, leads the reader wondering whether Sprint planned to withhold certain documents based on its objections. Significantly, Sprint did not state that it would produce *all* non-privileged documents—a specification which, if included, *might* support Sprint's argument that it complied with Fed. R. Civ. P. 34(b)(2)(C) by objecting to a *specified* part of the request (i.e., only the part seeking privileged information) and producing documents requested in the rest of the request.[14]

But Sprint informs the court in its motion for reconsideration that no party was left guessing as to what documents it was withholding because it produced a privilege log reflecting each withheld document. Defendants do not dispute this contention in their response brief. Indeed, defendants imply that Sprint followed the pattern of practice that had developed between the parties in this case. Defendants join Sprint in asking that the court

---

[14]Fed. R. Civ. P. 34(b)(2)(C) states: "An objection to part of a request must specify the part and permit inspection of the rest."

reconsider its holding that Sprint waived privilege via its conditional responses.

Based on this new information and on the agreement of the parties that the relief awarded by the court (i.e., ordering the production of documents withheld for privilege) would be manifestly unjust in these circumstances, the court grants Sprint's motion for reconsideration of its holding that Sprint waived its objections through conditional responses. Although in this particular case the court's waiver *holding* is withdrawn at the request of both parties to avoid a draconian result, practitioners before this court should *not* view this as a retreat from the court's *ruling* that when a party objects to discovery but nonetheless answers "subject to" the objection, the objection will be deemed waived. The court therefore will proceed to address defendants' arguments that Sprint instead waived privilege protection by disclosing its attorneys' communications and analyses during the *Vonage* trial.

### III. Decision on the Substantive Merits of the Objections

As recounted in the February 11, 2014 order, the attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[15] The privilege also protects legal advice given by an attorney in the course of representing a client.[16] The privilege, however, "is to be extended no more broadly than necessary to effectuate its purpose."[17]

---

[15] *Tilley v. Equifax Info. Servs. LLC*, No. 06-2304, 2007 WL 3120447, at *2 (D. Kan. Oct. 24, 2007) (internal quotations and citations omitted).

[16] *Id.*

[17] *New Jersey v. Sprint*, 258 F.R.D. 421, 425 (D. Kan. 2009) (citation omitted).

Sprint, as the party asserting the attorney-client privilege, bears the burden of showing that the privilege has not been waived.[18] "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[19] However, revealing the general topic of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication.[20] Likewise, "[u]nderlying facts are not protected by the privilege" and disclosing them does not waive the privilege over protected communications.[21] In this case, defendants assert waiver of attorney-client privilege not only as to the actual information disclosed by Sprint during the *Vonage* trial, but also to undisclosed information on the same subject matters.[22]

Defendants argue that during the *Vonage* trial, Sprint selectively disclosed its internal legal communications and analysis to impress upon the jury the merits of its claims that Vonage was infringing Sprint's patents. Defendants assert that by revealing its attorneys' communications and analyses, Sprint waived privilege as to the subject matters it placed at

---

[18]*Id.* at 426; *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 621 (D. Kan. 2001).

[19]*In re Quest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)).

[20]*Williams v. Sprint/United Mgmt. Co.*, No. 03-2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006).

[21]*Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981)).

[22]*See* Fed. R. Evid. 502.

issue: assessments by Sprint's legal department of the patentability of Christie's purported inventions (topic one), and Sprint's preparation and prosecution of patent applications for such inventions (topic two). Defendants argue that they need access to information on these subject matters so that they may challenge the narratives Sprint presented in *Vonage* and has indicated it will present in these cases. According to defendants, all information related to these subject matters must in fairness be considered together. The court will separately consider the disclosures Sprint made as to these two subject matters.

*Assessments by Sprint's Legal Department Regarding Patentability*

Defendants take issue with the following testimony and statements of Sprint's counsel related to the patentability of Mr. Christie's inventions:

- In his opening statement, Mr. Webb stated that, upon hearing of Mr. Christie's ideas, "Sprint reacted swiftly and in an unprecedented manner." He stated that "within days," Sprint met with Mr. Christie and "assigned a patent agent to be Joe Christie's shadow. Never happened before, hasn't happened since."

- Mr. Setter testified about an October 15, 1993 meeting between Mr. Christie and members of Sprint's legal department. Mr. Setter stated that the purpose of the meeting was for Mr. Christie to "teach the law department . . . his technology." Sprint introduced into evidence, through Mr. Setter, a document that Mr. Christie brought to the meeting explaining his inventions. Mr. Setter also testified about his basic understanding of what Mr. Christie's ideas were.

- Mr. Webb discussed Sprint's search for prior art during his opening statement. He stated that Sprint "had professional search groups scour the entire country looking for prior art, other patents, other literature," and "also had professional search firms overseas looking throughout the entire world to find prior art." He stated that Sprint "got all this stuff back and looked at it and found out exactly what [it] suspected, that this really was a patentable invention."

- Mr. Setter testified about Sprint's legal department's search for, and analysis of, prior

art. He stated, for example, "We would do prior art searches and compare the prior art which is the preexisting technology that's in other patents and white papers and things like that, collect that[,] analyze that[,] compare it to [Mr. Christie's] ideas and, you know, assess are there new things here or are [Mr. Christie's] ideas in . . . the prior patents." Mr. Setter also testified that after he reviewed the prior art, "a decision was made at that point to prepare [a] patent application on [Mr. Christie's] technology."

- Mr. Ball similarly testified that Sprint commissioned searches for prior art and, based on the results of the searches, "proceeded to draft patent applications" because "we were then confident with respect to what we thought was new and unique with respect to [Mr. Christie's] inventions."

Defendants argue that by making these intentional disclosures, Sprint waived any "protection with respect to its assessment of patentability."[23] The court disagrees. Instead, the court finds that these disclosures revealed facts, topics of discussion, and general legal conclusions—none of which were protected from disclosure in the first instance.

First, Mr. Webb's statements about Sprint acting quickly in response to, and assigning a patent agent to learn about, Mr. Christie's ideas cannot be classified as anything other than a revelation of facts. As stated above, "Underlying facts are not protected by the privilege."[24] Similarly, neither the acts or services performed by an attorney during the course of his representation, nor the scope of representation, are within the attorney-client privilege because they are not "communications."[25]

---

[23]ECF doc. 154 at 22.

[24]*Williams*, 2006 WL 1867478, at *10 (citing *Upjohn*, 449 U.S. at 396).

[25]*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005).

Second, Mr. Setter's testimony about the meeting between Mr. Christie and Sprint's legal team cannot be deemed to reveal privileged information. It simply revealed the topic of discussion between attorneys and a third party.[26] Moreover, the document prepared by Mr. Christie to explain his inventions was not privileged—it was neither prepared by an attorney nor prepared by a client for the purpose of seeking legal advice. Defendants' state that the document included Mr. Setter's hand-written notes, but defendants have not argued that the notes contained Mr. Setter's legal work product, nor have defendants submitted a copy of the document. In addition, Mr. Setter's testimony about his understanding of Mr. Christie's idea did not contain any legal substance. Rather, it simply related the factual aspects of the idea: "[t]he technology was based on using a control system to control a broadband network to interface with the public telephone network."[27]

Third, information relayed about Sprint's prior art search did not reveal privileged communications. Statements and testimony about *how* Sprint conducted its search for prior art simply disclosed acts performed by counsel, not communications.[28] Likewise, Mr. Setter's testimony regarding Sprint's legal department assessing prior art by comparing it to Mr. Christie's ideas disclosed unprotected acts by counsel and not privileged

---

[26]*See id.* (holding that the subject matter of meetings with an attorney is not protected by the attorney-client privilege), *see also Williams*, 2006 WL 1867478, at *10 (ruling that revealing the general topic of discussion between an attorney and client does not waive the attorney-client privilege).

[27]ECF doc. 155-2 at 8.

[28]*See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 675.

communications. Finally, information that Sprint's review of prior art led it to conclude that it had a patentable invention revealed only Sprint's counsel's ultimate legal conclusion, not any substantive communication or attorney analysis behind the conclusion.[29]

The court concludes that the information Sprint disclosed during the *Vonage* trial about its assessment of the patentability of Mr. Christie's ideas (topic 1) did not reveal any privileged communication. Revealing non-privileged information, of course, does not waive protection accorded privileged information. Thus, to the extent Sprint asserts a privilege objection to producing information responsive to document Request Nos. 18 and 19, that objection is sustained.

### *Sprint's Preparation and Prosecution of Patent Applications*

Defendants next take issue with testimony and statements of Sprint's counsel related to Sprint's preparation and prosecution of the Christie Patent applications. Specifically:

- Mr. Webb stated in his opening statement that Sprint's patent applications included "every piece of prior art that they found," "because they knew some day they might be in a courtroom just like this defending these patents against others."

- Both Mr. Setter and Mr. Ball testified about instructions given from Mr. Ball to Mr. Setter to "leave no stone unturned" and to be as thorough as possible in preparing and prosecuting the patent applications because the patents were extremely important and valuable to Sprint.

Defendants argue that these "characterizations of communications within Sprint's legal

---

[29]*See New Jersey v. Sprint*, 258 F.R.D. at 427–28 (holding that testimony stating that legal counsel advised the defendant that it need not publicly disclose tax shelter issues did not waive the attorney-client privilege because it did not disclose the substance of the legal advice received); Feb. 11, 2014 Order, ECF doc. 177 at 15–16.

department . . . waived any purported attorney-client privilege with respect to the preparation and prosecution of patent applications for the Christie Inventions."[30]

Mr. Webb's opening comments (while perhaps objectionable on another basis) cannot be found to have revealed confidential attorney communications. That the applications included "every piece of prior art" is an unprotected statement of fact. Boasting that Sprint (or its attorneys) knew that the patent applications might be legally challenged—the implication being that the applications were prepared in a way to stand up to a challenge—is simply too vague and tenuous to be deemed a substantive disclosure of internal attorney communications.

The court reaches a similar conclusion with respect to the testimony that Mr. Ball instructed Mr. Setter to carefully prepare and prosecute the patent applications. These discussions, amounting to a general directive from a boss to "do a good job," reveal nothing of the substantive legal work done or discussed by Sprint's legal department. Rather, the testimony only reveals a general topic of conversation.[31] Accordingly, Sprint did not disclose

---

[30]ECF doc. 154 at 24.

[31]*See Williams*, 2006 WL 1867478, at *10 (holding that testimony about counsel's "general directive to run the adverse impact at different levels" revealed only the general topic of privileged communications, rather then the substance of protective communications, and as such did not waive the attorney-client privilege); *see also New Jersey v. Sprint*, 258 F.R.D. at 427–28 (holding that testimony stating that legal counsel advised the defendant that it need not publicly disclose tax shelter issues did not waive the attorney-client privilege because it did not disclose the substance of the legal advice received).

protected information when it elicited such testimony during the *Vonage* trial.[32]

The undersigned concludes that the information Sprint disclosed during the *Vonage* trial about Sprint's preparation and prosecution of patent applications (topic two) did not reveal privileged communication. As noted above, revealing non-privileged information does not waive protection accorded privileged information. Thus, to the extent Sprint asserts a privilege objection to producing information responsive to document Request No. 20, that objection is sustained.

IT IS THEREFORE ORDERED:

1. Sprint's motion for partial reconsideration (ECF doc. 192) is granted.

2. Defendants' motion to compel (ECF doc. 153) is denied in all respects. The portions of the February 11, 2014 order not specifically addressed herein remain unchanged and in effect.

Dated April 18, 2014, at Kansas City, Kansas.

                                              s/ James P. O'Hara
                                              James P. O'Hara
                                              U.S. Magistrate Judge

---

[32] Defendants state that during Mr. Ball's testimony on this topic, counsel for Vonage requested a sidebar and raised the issue of the possible waiver of attorney-client privilege. Sprint's counsel took the position that the communications were not privileged because the client was not present. Judge Lungstrum was not asked to make a ruling on this issue. The undersigned finds that the communications were not privileged, but obviously for a different reason than that asserted during the sidebar.