IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS CO., L.P., )
                                  )   **CONSOLIDATED CASES**
            Plaintiff,            )
                                  )
v.                                )   Case No. 11-2684-JWL
                                  )
COMCAST CABLE COMMUNICATIONS,     )
LLC, et al.,                      )
                                  )
            Defendants.           )
_____    )

SPRINT COMMUNICATIONS CO., L.P., )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. 11-2685-JWL
                                  )
CABLE ONE, INC.,                  )
                                  )
            Defendant.            )
_____    )

SPRINT COMMUNICATIONS CO., L.P., )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. 11-2686-JWL
                                  )
TIME WARNER CABLE, INC., et al.,  )
                                  )
            Defendants.           )
_____    )

**<u>ORDER</u>**

These consolidated cases involve claims by Sprint Communications Company, L.P. that defendants are infringing twelve patents related to broadband and packet-based telephony products. Defendants have filed a motion to compel the production of documents and to set a scheduling order governing such production **(ECF doc. 178)**. Because Sprint has an obligation to adequately search for and produce documents responsive to defendants' discovery requests, the motion is granted in large part.

**I.     Background**

This is not the first time that Sprint's delay in producing documents has been brought before the court. As discussed in the court's December 19, 2013 order,[1] Sprint has in its possession two broad categories of documents relevant to these consolidated actions: (1) documents produced by Sprint in five earlier lawsuits against different defendants, involving six of the patents-in-suit, and (2) documents related to six newly asserted patents-in-suit, particularly documents related to technology and affirmative defenses unique to the instant cases. During the scheduling conference held on April 11, 2013, Sprint stated that it was prepared to quickly produce documents from its prior litigations. With respect to documents unique to these cases, defendants served common requests for production of documents on May 10, 2013, and individual defendants served document requests in April, May, and June 2013.

On November 7, 2013, defendants filed a motion to amend discovery deadlines,

---

[1]ECF doc. 168.

arguing that Sprint's document production had been "woefully deficient."[2] Defendants asserted that, as to documents produced in prior litigations, metadata problems existed. Defendants also asserted—and Sprint acknowledged—that Sprint had not yet produced any documents specific to the newly asserted patents-in-suit. In the court's December 19, 2013 amended scheduling order, the court granted defendants' motion to amend and extended deadlines in the original scheduling order by three months.[3] The court noted that it appeared that the metadata problems with prior litigation documents had been resolved (after the filing of the motion to amend), and that the parties were continuing "to meet and confer regarding a process to facilitate the completion" of discovery specific to the newly asserted patents-in-suit.[4]

In the instant motion to compel, defendants state that not much has happened in the way of Sprint's document production since the issuance of the amended scheduling order. Defendants contend that metadata problems continue to exist as to documents produced in prior litigations, and that Sprint—with one exception—has refused to collect and produce documents from custodians defendants have identified as likely to possess material, non-duplicative documents. Defendants state that Sprint is not withholding documents from these

---

[2]ECF doc. 137; ECF doc. 138 at 3.

[3]ECF doc. 168.

[4]*Id.* at 4.

custodians based on any objections or privilege assertions.[5] The court therefore reads defendants' motion as seeking an order compelling Sprint to respond to all of defendants' document requests, rather than to overrule objections and compel production as to particular requests.[6]

Sprint responds that as to documents produced in prior litigations, its document production is now complete—that it has no more information to provide. As to discovery unique to the six newly asserted patents-in-suit, Sprint asserts that the reason its document production has lagged is that defendants "refuse to agree to a reasonable discovery plan." Sprint challenges defendants' identification of specific custodians from whom defendants would like documents collected as unreasonable, and instead proposes its own, much more limited, discovery protocol.

## II. Production of Documents Unique to the Six Newly Asserted Patents

The parties have vastly different ideas of Sprint's obligations in responding to defendants' document requests, particularly with respect to the collection and production of responsive documents unique to the newly asserted patents-in-suit. The parties disagree both

---

[5]Defendants have filed an October 1, 2013 letter from Sprint's counsel stating, "Sprint has agreed, without limitation, to produce documents responsive to all but one (i.e., Request No. 3) of Time Warner's Requests." ECF doc. 184-83.

[6]*See* ECF doc. 211 at 6 ("The relevance or breadth of documents called for by any specific document request has never been at issue. The dispute is whether Sprint will search for documents responsive to Defendants' unobjectionable document requests from all custodians who are likely to have or who previously had potentially material, non-cumulative documents, as the Agreed Order requires.").

about the number of custodians to be searched and about the use and applicability of search terms.

Sprint proposed a discovery plan under which it would collect documents from six so-called "common custodians."[7] Sprint states that these common custodians are "individuals directly involved in Sprint's efforts to provide its patented technologies to potential cable partners" such that they are "likely to have relevant, non-cumulative documents relating to common aspects of Defendants' defenses."[8] Sprint's proposal also called for Sprint to identify two additional custodians for each of the three defendants. The defendant-specific custodians would be "lower-level personnel tasked with handling day-to-day account servicing" specific to each defendant.[9] As of April 1, 2014 (the date of defendants' reply brief), Sprint had produced documents from the six common custodians and from one defendant-specific custodian.

Defendants, on the other hand, have identified sixty-three custodians whom defendants believe could possess information relevant to defendants' affirmative defenses.[10]

---

[7]The common custodians identified by Sprint are Jim Patterson, Daniel Dooley, Greg Glass, Andrew Greig, Keith Cowan, and Steve Elfman. ECF doc. 185-4 at 2–3.

[8]ECF doc. 203 at 6; *see also id.* at 12 ("Common Custodians were identified because of their managerial role within Sprint as it relates to selling its telephony services to various cable providers, including Defendants.").

[9]*Id.* at 12.

[10]Each defendant identified custodians who might have documents relevant to its unique defenses: Time Warner Cable identified sixteen custodians, Comcast identified thirty-eight custodians, and Cable One identified nine custodians. *See* ECF doc. 183 at 14.

Defendants state that they made the identifications "in an effort to get the discovery they need,"[11] but argue that Sprint has an obligation under the Agreed Order Establishing Protocol for ESI and Paper Documents ("Agreed Order") to "identify the individuals who have or previously had control of a network, computer or other specific electronic files within or upon which Potentially Discoverable ESI may be or may have been maintained."[12] Defendants also argue that under the Agreed Order, Sprint may not rely exclusively on the use of electronic search terms (with the absence of human review) to identify responsive documents. Rather, according to defendants, Sprint must identify responsive documents "by more conventional and thorough means if those documents are stored in a format which permit [sic] it."[13] Finally, defendants assert that, even for the types of ESI for which reliance on search terms is appropriate, Sprint has refused to employ previously agreed-upon search terms.

Sprint argues that defendants' proposal is "unreasonable" because "Defendants demand a broad range of irrelevant documents from scores of custodians having little or no unique involvement in this case."[14] Sprint asserts that Fed. R. Civ. P. 26(b)(2) supports limiting discovery to the protocol Sprint proposed because defendants' proposal would be

---

[11]*Id.*

[12]ECF doc. 94 at ¶ III.B.

[13]ECF doc. 183 at 20.

[14]ECF doc. 203 at 11.

unduly burdensome.

Before addressing the merits of the opposing discovery proposals, the court must resolve two red-herring issues raised by the parties: (1) Sprint's argument that defendants' suggested discovery protocol is "facially overbroad,"[15] and (2) defendants' argument that Sprint waived discovery objections.

1. Sprint's Argument that Defendants' Suggested Discovery Protocol is Facially Overbroad

Before arguing that defendants' discovery proposal is unduly burdensome, Sprint makes the argument that the proposal is facially overbroad. The court rejects this vague and unsupported assertion. First, the court notes that Sprint is not objecting to any particular document request as facially overbroad; indeed, Sprint has affirmatively stated that it is *not* withholding documents based on any objection it lodged to a document request.[16] Instead, Sprint appears to be arguing that defendants' proposed plan for responding to those document requests is facially overbroad, therefore requiring defendants to bear the burden of proving their proposed plan is not objectionable. Sprint cites no authority that supports this argument.[17] In any event, the court cannot say that defendants' proposed plan is objectionable on its face. Each defendant simply identified Sprint custodians who may have

---

[15]*Id.*

[16]ECF doc. 184-83.

[17]The cases cited by Sprint address situations in which document requests themselves were alleged to be overbroad or irrelevant on their face. As earlier indicated, Sprint has not attempted to show that any of defendants' document requests are overbroad or irrelevant.

unduly burdensome.

Before addressing the merits of the opposing discovery proposals, the court must resolve two red-herring issues raised by the parties: (1) Sprint's argument that defendants' suggested discovery protocol is "facially overbroad,"[15] and (2) defendants' argument that Sprint waived discovery objections.

1. Sprint's Argument that Defendants' Suggested Discovery Protocol is Facially Overbroad

Before arguing that defendants' discovery proposal is unduly burdensome, Sprint makes the argument that the proposal is facially overbroad. The court rejects this vague and unsupported assertion. First, the court notes that Sprint is not objecting to any particular document request as facially overbroad; indeed, Sprint has affirmatively stated that it is *not* withholding documents based on any objection it lodged to a document request.[16] Instead, Sprint appears to be arguing that defendants' proposed plan for responding to those document requests is facially overbroad, therefore requiring defendants to bear the burden of proving their proposed plan is not objectionable. Sprint cites no authority that supports this argument.[17] In any event, the court cannot say that defendants' proposed plan is objectionable on its face. Each defendant simply identified Sprint custodians who may have

---

[15]*Id.*

[16]ECF doc. 184-83.

[17]The cases cited by Sprint address situations in which document requests themselves were alleged to be overbroad or irrelevant on their face. As earlier indicated, Sprint has not attempted to show that any of defendants' document requests are overbroad or irrelevant.

information specific to that defendant's affirmative defenses, and asked Sprint to either search the custodians' files or explain why production from particular custodians is not necessary. Sprint has acknowledged that "it cannot simply rely on [its] prior productions, as this case involves a number of new issues, including Defendants' affirmative equitable defenses of estoppel, waiver, acquiescence, and laches."[18] Defendants' discovery proposal thus strikes at material issues in this case and is not facially overbroad.

2. <u>Defendants' Argument that Sprint Waived Discovery Objections</u>

Defendants seem to make the rather untenable argument that Sprint waived any objection to defendants' *discovery proposal* by affirmatively representing that it would produce documents responsive to defendants' *discovery requests*. The court agrees with defendants that Sprint has waived its objections to specific document requests—both by stating that it was not withholding documents based on any particular request and by not re-asserting objections to particular requests in response to defendants' motion to compel. But, as noted above, defendants themselves declare that the instant discovery dispute is about *which custodians* Sprint will collect documents from in responding to the discovery requests.[19] In other words, there is no dispute about Sprint's objection (or absence thereof) to individual document requests, and defendants' waiver argument along those lines confuses the true issue before the court. Defendants have presented no support for the argument that

---

[18]ECF doc. 203 at 11–12.

[19]*See* ECF doc. 211 at 6.

a party's objection as to *how* it should go about making full and adequate responses to document requests must be asserted in the party's discovery answers or be deemed waived. Not only is such an argument nonsensical, it does not align with Fed. R. Civ. P. 26(b)(2)(B), which specifically allows a party from whom ESI discovery is sought to assert undue burden in response to a motion to compel.

The court therefore turns to the substantive merits of the two differing discovery protocols proposed by the parties and concludes that a balanced approach to completing discovery is warranted.

### 3. A Balanced Approach to Completing Discovery of New Information

At the heart of defendants' motion, they ask the court to compel Sprint to identify Sprint custodians who have or previously had potentially material, non-duplicative documents, and then to produce responsive documents from those custodians. As noted above, the Agreed Order required each party to "identify the individuals who have or previously had control of a network, computer or other specific electronic files within or upon which Potentially Discoverable ESI may be or may have been maintained."[20] Defendants state that despite their multiple requests, Sprint has failed to make any such identification. In response to the motion to compel, Sprint does not dispute its obligation, nor deny or explain its failure to comply. Instead, Sprint seizes on the fact that defendants

---

[20]ECF doc. 94 at ¶ III.B.

identified sixty-three custodians whom defendants believe *could* possess information relevant to defendants' affirmative defenses. Sprint argues that collecting documents from each of these custodians would be unduly burdensome and expensive, and only would result in duplicative and cumulative documents.

Sprint's argument misses the mark. Defendants did not ask Sprint to collect documents from the sixty-plus custodians defendants identified. Rather, faced with Sprint's failure to identify potential custodians in violation of the Agreed Order, defendants started suggesting people.[21] Defendants then asked Sprint either to search those identified individuals' files *or* explain why production from particular custodians on the list was not necessary.[22] Sprint refused to do either—and still didn't create its own list of potential custodians. Instead, Sprint repeated its mantra of "Sprint knows best,"[23] argued that it had no "obligation to collect duplicative or cumulative documents," and continued to assert its position that identifying two custodians specific to each defendant is sufficient.

The court takes no issue with Sprint's position that it need not produce cumulative and duplicative documents (but nor do defendants, for that matter). But the court disapproves of

---

[21]On September 26, 2013, October 28, 2013, and January 3, 2014, Comcast, TWC, and Cable One, respectively, provided Sprint with names of potential custodians whom defendants believed fit the description in the Agreed Order.

[22]*See, e.g.*, ECF doc. 184-28 at 5.

[23]*See, e.g.,* ECF doc. 203 at 14 ("As explained above, Sprint's document productions have been based on an informed understanding of the facts.").

Sprint's continued failure to work with defendants to reach a reasonable solution for the completion of document production in these consolidated actions.[24] Sprint has unilaterally (and apparently arbitrarily) determined that only six common custodians and two defendant-specific custodians will have their files searched for documents responsive to defendants' discovery requests. Sprint suggests that collecting documents from any additional custodians would be unduly burdensome. But Sprint provides no support or foundation for its position that its proposed discovery plan will capture most, if not all, of the documents in its possession responsive to defendants' document requests (to which no objections are currently asserted). Sprint has not explained the foundation of its belief that the search of additional custodian files would be cumulative, duplicative, or *unduly* burdensome.[25]

The court will not, at this point and on this record, make a determination of *which* Sprint custodians should have their records searched or set an arbitrary *number* of custodians subject to such a search. But the court does order Sprint, in very short order as set out below,

---

[24]Sprint seems to be developing a practice of sluggish document production in this action. *See, e.g.,* ECF doc. 168 (discussing Sprint's failure to adequately participate in discovery).

[25]*See Mikron Indus., Inc. v. Hurd Windows and Doors, Inc.*, No. C07-532RSL, 2008 WL 1805727, at *1 (W.D. Wash. April 21, 2008) (holding that defendants failed to discharge their Fed. R. Civ. P. 26(c) meet-and-confer obligation in making the conclusory statement that searching additional ESI would be expensive and yield cumulative results because "compliance with the Rule would have involved a more substantive discussion regarding defendants' difficulty in producing responsive ESI, the extent to which defendants have searched ESI to date, and the foundation for defendants' belief that a more thorough search of ESI, including backup tapes, would yield only information that has already been produced").

to sit down with defendants in a good-faith attempt to resolve these questions.

To the extent that it will aid the parties' discussion, the court notes that the balancing required by Fed. R. Civ. P. 26(b)(2) likely eliminates the possibility that all sixty-three custodians identified by defendants should have their documents searched. Rule 26(b)(2)(C)(iii) requires that discovery be proportionate, i.e., the court must limit the extent of discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." In addition, Rule 26(b)(2)(B) relieves a party from providing discovery of ESI "from sources that the party identifies as not reasonably accessible because of undue burden or cost," absent a showing of good cause by the requesting party.[26] Sprint has presented the affidavit of its manager of legal discovery/compliance, Sonya Thornton.[27] Ms. Thornton explains in detail the method by which Sprint processes and reviews the documents of selected custodians, and states that the average cost of such processing and review is $26,500 per custodian (or $53,000 per custodian when a keyword search is not used).[28] Of

---

[26] Sprint, as the party from whom the proposed discovery is sought, bears the burden of proving such discovery is unduly burdensome or costly. Fed. R. Civ. P. 26(b)(2)(B); *Gov't Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc.*, No. 10-2558, 2012 WL 3238082, at *3 (D. Kan. Aug. 7, 2012) (citing *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, Nos. 08–1250, 08–2392, 2012 WL 1080801, at *4 (D. Kan. Mar. 29, 2012)).

[27] ECF doc. 203-1.

[28] *Id.* at 4.

course, the expense of discovery is only one factor to be considered, and defendants correctly assert that the other Rule 26(b)(2)(C) factors—including the amount in controversy, the complex and significant issues at stake, and the importance of discovery in resolving the issues—all weigh in defendants' favor.[29]

On the other hand, Sprint's suggestion to collect responsive documents from only twelve new custodians in these three cases appears clearly unreasonable. Sprint agreed to respond to defendants' document requests under Fed. R. Civ. P. 34(b)(2), and Sprint's discovery must be adequate to satisfy that obligation. Sprint does not dispute that each defendant had an extensive and long-standing relationship with Sprint involving many people on both sides of the relationship.[30] These relationships are the subject of the defendant-specific affirmative defenses of estoppel, waiver, acquiescence, and laches. Based on these relationships and defenses, defendants have searched the files of eighty-one individuals—thirty-six individuals at Time Warner Cable, thirty-five individuals at Comcast, and ten individuals at Cable One. It seems logical, as defendants note, that Sprint's relationship with each defendant involves numerous Sprint employees who have generated millions of pages of documents.

---

[29]*See also* Fed. R. Civ. P. 26(b)(2)(B) (stating that even if a party demonstrates that ESI is not reasonably accessible from a source because of undue cost, the court may nevertheless order discovery from that source after considering the limitations in Fed. R. Civ. P. 26(b)(2)(C)).

[30]Sprint and Time Warner Cable, for example, had a contractual relationship for over five years.

Separate and apart from the parties' disagreement over custodians, apparently they disagree about the *process* by which Sprint should search selected custodians' documents. Defendants argue in their motion that under the Agreed Order, Sprint may not rely exclusively on the use of electronic search terms (with the absence of human review) to identify responsive documents. Rather, according to defendants, Sprint must identify responsive documents "by more conventional and thorough means if those documents are stored in a format which permit [sic] it."[31] Defendants also assert that, even for the types of ESI for which reliance on search terms is appropriate, Sprint has refused to employ previously agreed-upon search terms.[32] Sprint did not address either of these contentions in its response brief, thereby conceding the points.[33] Thus, the court grants defendants' request that Sprint be compelled to (1) include in its document searches a human review of hard copy documents, and (2) apply the search terms to which it previously agreed (i.e., "the additional terms suggested by Defendants in Exhibit A to Mr. Hope's December 23, 2013

---

[31]ECF doc. 183 at 20. The Agreed Order states: "The use of Search Terms and Searching Syntax . . . does not excuse a party from its normal obligations under the Federal Rules of Civil Procedure to conduct its own diligent search for responsive documents and produce them." ECF doc. 94 at ¶ III.A.

[32]ECF doc. 183 at 21.

[33]*See Hartford Fire Ins. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1182 (D. Kan. 2012) (holding that party waived objections to certain arguments by not mentioning them in summary judgment response brief); *Walker v. Faith Techs., Inc.*, 344 F. Supp. 2d 1261, 1270 (D. Kan. 2004) (granting summary judgment on claims not addressed in response brief).

correspondence"[34]).

The court is hopeful that if Sprint engages in the meet-and-confer and discovery processes, the parties can agree on a fair and sensible protocol for Sprint's collection and production of responsive documents. The parties are ordered to meet, in person, to resolve this matter by **May 20, 2014.** Should the matter remain unresolved after that meeting, including if the parties are unable to reach an agreement as to a subset of specific custodians whose records will be searched, the parties shall submit their respective positions in a "joint motion for order" by **June 3, 2014.** In any such motion, Sprint should provide an explanation to support any contention that a particular custodian's documents would duplicate those already produced. The court will quickly resolve any dispute.

### III. Technology Documents Related to Newly Asserted Patents-In-Suit

Similar to their identification of custodians likely to possess documents unique to defendants' affirmative defenses to the newly asserted patents-in-suit, defendants have identified twenty-one custodians whom they believe are likely to possess documents related to the technology behind the newly asserted patents-in-suit. Defendants assert that Sprint has unexplainably failed to produce responsive, technology-related documents from these custodians.

Sprint responds that it produced all technology-related documents when it produced

---

[34]ECF doc. 185-4 at 3.

the documents from its prior litigations. According to Sprint, all of the twelve patents at issue in this case, including the six newly asserted patents, emerged from the work of inventor Joe Christie and the internal Sprint engineer team (dubbed "JCS2000") assigned to implement Christie's ideas. The asserted patents issued from patent applications filed in 1994 through 1998[35]—long before Sprint filed the earlier cases in 2005 and 2008. Sprint states that it produced documents relating to Christie's inventions and the JCS2000 program—including documents related to the newly asserted patents—in the previous cases and, therefore, in its earlier production in these consolidated cases. Sprint specifically asserts that it produced documents from thirteen of the twenty-one custodians identified by defendants.[36] Sprint states that collecting documents from these custodians again would result in cumulative material, or if not, would be too burdensome.[37]

In reply, defendants argue that Sprint could not possibly have produced all technology-related documents unique to the newly asserted patents. As an example, defendants state that Patent No. 6,633,561 was issued after Sprint had completed the bulk of its collection of prior litigation documents. There seems to be some confusion on this point,

---

[35]*See* ECF doc. 203 at 10, n.23 & n.24.

[36]*Id.* at 8 n.14 (listing, among others, Michael Gardner, William Wiley, Dean Boldt, Don Lewis, Gary Kapperman, Keith Jamour, Manu Bahl, Mark Sucharczuk, Ray Spitzer, Scott Schulte, Ted Harvey, Terry Yake, and Dean Howell).

[37]*Id.* at 14 (addressing Dean Boldt, Manu Bahl, Mark Sucharczuk, Ray Spitzer, and Dean Howell, as well as Bernie Bianchino).

however, because the court's research shows that the 6'561 patent was asserted in Sprint's 2005 case against Vonage Holdings Corp., and in that case was alleged to have been issued on October 14, 2003.[38]

Defendants further argue that Sprint did not deny that it did not search the files of the custodians identified by defendants or argue that those custodians did not have relevant information. Nor did Sprint provide specific information about the costs of searching the custodians' records. On these points, the court believes that the parties need to revisit how Sprint will respond to defendants' discovery requests. As with the discovery discussed above related to affirmative defenses unique to the newly asserted patents, a middle ground between the parties' suggested approaches is probably reasonable. On the one hand, the court has not been presented with anything that would cause it to doubt Sprint's assertion that it produced all technology documents (related to both the patents asserted in prior litigation and in the present cases), at least from the custodians whose records were previously searched. But on the other hand, Sprint has not provided sufficient support for its refusal to search the records of additional custodians. Should the parties not be able to reach an agreement on this issue at the in-person meeting ordered above, Sprint should provide in the joint motion for order a specific explanation to support any contention that a particular custodian's documents would duplicate those already produced.

---

[38] *Sprint Commc'ns. Co. v. Vonage Holdings Corp.*, D. Kan. Case No. 05-2433, ECF doc. 2 at 3 (amended complaint).

**IV.   Metadata of Documents Produced in Prior Litigations**

Defendants' motion next seeks the metadata of documents Sprint produced arising out of its prior, related litigations. Sprint represents that it has completed its production of documents from prior litigations. Defendants do not directly dispute this contention, but assert that required metadata is missing for about 63,000 pages of Sprint's production. Sprint explains in response that the documents that lack metadata "never had metadata to Sprint's knowledge, and include copies of scanned paper documents, prior pleadings . . . , ECF notices, and the USPTO [U.S. Patent and Trademark Office] filings."[39] Sprint "investigated the various bates-ranges recently identified by Defendants, and confirmed that all metadata present, if any, was produced to Defendants."[40] Thus, Sprint contends, there is no metadata for it to produce.

Apparently recognizing that Sprint cannot be compelled to produce what does not exist, defendants assert in reply that Sprint should be ordered to produce "information that otherwise would have been contained in metadata, including the custodial source from whom each document was produced."[41] Because this argument has only been developed in defendants' reply brief, because it is unclear whether defendants are seeking anything other than the custodial source of documents, and because it does not appear that the parties have

---

[39]ECF doc. 203 at 9.

[40]*Id.* at 9 n.20.

[41]ECF doc. 211 at 25.

conferred in an attempt to reach an agreement on what, absent metadata, Sprint should produce, the court will not decide this question on the present record. The parties are directed to address this issue, in person, at the meeting ordered above.

IT IS THEREFORE ORDERED that defendants' motion to compel is granted to the extent discussed above. Although this order does not set a specific date by which Sprint shall complete its production of documents, it does require Sprint to sit down with defendants within the next two weeks to develop a solid plan for that completion. Quite frankly, Sprint should have done this long ago in response to defendants' requests and pending discovery deadlines. In the hopefully unlikely event that the parties cannot agree on a balanced discovery approach consistent with Rule 26(b)(2), they shall submit a joint motion for order resolving any remaining disputes by June 3, 2014. Sprint is forewarned that should the court determine that it has not satisfied its discovery obligations, the court will impose very short deadlines for Sprint to complete its production.

Dated May 6, 2014, at Kansas City, Kansas.

                                          s/ James P. O'Hara
                                          James P. O'Hara
                                          U.S. Magistrate Judge