IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | <u>CONSOLIDATED CASES</u> |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11-2684-JWL |
| COMCAST CABLE COMMUNICATIONS LLC, et al., | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11-2685-JWL |
| CABLE ONE, INC., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11-2686-JWL |
| TIME WARNER CABLE, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

These consolidated cases brought by plaintiff Sprint Communications Company, L.P. ("Sprint") come before the Court on defendants' objections (Doc. # 245) to the Orders by which the Magistrate Judge denied defendants' motion to compel (Doc. # 153). For the reasons set forth below, the objections are **sustained in part and overruled in part.** The Court concludes that Sprint did waive the attorney-client privilege with respect to the subject of an outside law firm's legal advice concerning possible infringement by Vonage, and defendants' objections are sustained to that extent. The objections are otherwise denied.[1]

**I.    Background**

In these actions, Sprint asserts claims of patent infringement against various defendants. In September 2007, the undersigned presided over a trial of Sprint's patent infringement claims against defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively "Vonage"). The *Vonage* case involved some of the same patents, issued to inventor Joseph Christie, that are at issue in the present cases. During the *Vonage* trial, Sprint called two in-house attorneys, Michael Setter and Harley Ball, to testify about Mr. Christie's inventions, Sprint's evaluation of their patentability, Sprint's

---

[1]In light of the Court's conclusion that this matter may be decided on the basis of the parties' written submissions, the Court denies defendants' request for oral argument.

2

patent applications, and Sprint's decision to sue Vonage for infringement. Sprint's trial counsel also discussed those topics in opening statement and closing argument in *Vonage*.

In the present cases, defendants propounded document requests to Sprint by which they sought documents with information relating to the following four topics (as characterized by defendants), which were the subjects of Sprint's disclosures during the *Vonage* trial (hereafter referred to as "Topic 1," "Topic 2," etc.): "(1) assessments by Sprint's legal department of the patentability of Mr. Christie's purported inventions; (2) the preparation or prosecution of patent applications for such inventions (including instructions and other communications of Sprint's legal department relating thereto); (3) communications and analysis of Sprint's legal department concerning its pre-suit investigation into whether Vonage infringed the patents concerning Mr. Christie's purported inventions; and (4) communications among Sprint's legal department and its executives regarding authorization to contact Vonage about alleged infringement of such patents and to sue Vonage for such alleged infringement." Sprint asserted objections based on attorney-client privilege and work-product immunity, and defendants moved to compel production of the documents. In their motion to compel, defendants argued that Sprint had waived the attorney-client privilege by its testimony and discussion of those topics during the *Vonage* trial.

On February 11, 2014, the Magistrate Judge issued an order (Doc. # 177) granting the motion in part and denying it in part. The Magistrate Judge upheld the assertion of

the attorney-client privilege and denied the motion to compel with respect to Topic 3 and Topic 4. With respect to Topic 1 and Topic 2, however, the Magistrate Judge ruled that Sprint had not properly invoked—and thus had waived—the attorney-client privilege in responding to the document requests, and he therefore granted the motion to compel with respect to those topics. Sprint moved for reconsideration of the latter ruling, and on April 18, 2014, the Magistrate Judge issued a second order (Doc. # 228) granting the motion. Upon reconsideration, the Magistrate Judge concluded that Sprint had not waived the attorney-client privilege with respect to Topic 1 and Topic 2 under the specific circumstances of these cases, and he proceeded to uphold the assertion of the privilege. Thus, in the end, the Magistrate Judge denied the motion to compel in its entirety. Defendants now seek review of those orders by this Court.

## II.  Governing Standard of Review

With respect to a magistrate judge's order relating to nondispositive pretrial matters, the district court does not conduct a de novo review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate judge's order is "clearly erroneous or contrary to law." *See First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has

been committed." *See Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### III. Analysis

#### A. *Work-Product Immunity*

In his first order, the Magistrate Judge noted that, although the parties had set forth the standards for work-product protection and waiver in their briefs on the motion to compel, defendants had not made any specific arguments relating to whether Sprint waived work-product immunity by its use of work product during the *Vonage* trial, other than defendant's inclusion of a conclusory statement about work-product waiver in a footnote in their reply brief. Thus, the Magistrate Judge did not address the issue of work-product waiver.

In their initial brief in support of their objections to this Court, defendants did not make any arguments relating specifically to waiver of work-product immunity, nor did it take issue with the Magistrate Judge's refusal to address that objection by Sprint to the document requests. In its response brief to this Court, Sprint observed that, in light of that refusal by the Magistrate Judge, any objection to the production of a document based on the assertion of the work-product immunity would not be affected by any ruling that Sprint had waived the attorney-client privilege. Subsequently, in a footnote in their reply brief, defendants contended that they had argued work-product immunity in their motion to compel and thus had not forfeited any such argument, and that because the

5

theory of implied waiver operates in the same way in both contexts of the attorney-client privilege and work-product immunity, "there is no need for a separate analysis of Defendants' work-product waiver claims."

The Court agrees with Sprint that defendants have waived any challenge to Sprint's work-product objections. The Magistrate Judge explicitly ruled that defendants had not sufficiently raised the work-product issue in their briefs, and if defendants wished to challenge that ruling, they were obliged to make that challenge in their initial objections to this Court. The Court will not consider an argument raised for the first time in a reply brief. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)). Defendants thus waived any challenge to that ruling by the Magistrate Judge, which therefore still stands. The effect of that ruling is that defendants failed to raise sufficiently the issue of work-product waiver in their motion to compel, which means that Sprint's objections to the document requests on the basis of work-product immunity still have effect.

### B.     *Explicit Waiver – Attorney-Client Privilege*

A party waives the attorney-client privilege if it discloses the substance of an otherwise-privileged communication. *See In re Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).[2]  Defendants assert that Sprint disclosed privileged

---

[2]The Federal Circuit has held that, in a patent case, the issue of waiver by
(continued...)

6

information during the *Vonage* trial and thus waived the attorney-client privilege with respect to the subject matter of that information. The Magistrate Judge disagreed in his two orders, and defendants now challenge those rulings.

The attorney-client privilege protects only communications and does not protect underlying facts. *See Upjohn Co. v. United States*, 449 U.S. 383, 385-86 (1981). Moreover, as this Court has observed, the privilege does not protect information concerning the activities of the attorney or the general topic of discussion between attorney and client, as long as the substance of the communication is not revealed. *See Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 499-500 (D. Kan. 1997). The Magistrate Judge applied these principles of privilege law, and defendants do not dispute that such principles apply here.

In his orders, the Magistrate Judge thoroughly analyzed each alleged disclosure, by testimony or attorney statement, by Sprint in the *Vonage* trial, and he concluded that in every instance, covering all four topics, the witness or attorney had not disclosed the substance of privileged communications between attorney and client. The Court has reviewed those disclosures, and it concludes that, with a single exception, the Magistrate Judge did not clearly err in his rulings.

The Court concludes that in one instance, Sprint did disclose the substance of a

---

²(...continued)
disclosure of privileged information is governed by regional circuit law. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001).

privileged communication between attorney and client. In the *Vonage* trial, Sprint's trial attorney stated in opening statement that Sprint believed that Vonage had infringed 43 patents, a Sprint attorney had an outside law firm look at the issue, the law firm "agreed", and Sprint then contacted Vonage and accused it of infringement. By this statement, Sprint disclosed the substance of legal advice received from an outside law firm, namely that outside counsel agreed that Vonage had infringed. *See, e.g.*, *In re Independent Serv. Orgs.*, 1999 WL 450906, at *3 (D. Kan. May 24, 1999) (retainer letters that also included legal advice that other party had breached a contract, committed tortious interference, and violated statutes, and that the client should file suit were privileged). Thus Sprint did disclose protected information and did thereby waive the attorney-client privilege with respect to the subject matter of that information.[3]

---

[3]In neither its response to defendants' motion to compel or its response to defendants' objections to the Magistrate Judge's rulings did Sprint try to explain how it had not revealed the substance of legal advice by this statement of counsel. Sprint argued generally in responding to the motion to compel, without citation to relevant authority, that ultimate legal conclusions should fall outside the attorney-client privilege because the attorney's ultimate recommendation to the party will always be revealed by the fact that the party subsequently filed suit. A party can easily avoid waiver, however, by testifying only that it sought advice from counsel and then acted in a certain way, thereby maintaining the privilege with respect to the entire subject matter by refusing to disclose explicitly the attorney's ultimate advice. Indeed, the Magistrate Judge made this very distinction in his ruling with respect to Topic 4. *See also New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 428 (D. Kan. 2009) (because ultimate legal advice was not disclosed and inference was required to determine the substance of that advice based on subsequent actions, privilege was not waived). Under Sprint's position, a party could be asked directly on the stand whether its attorney advised that a patent had been infringed, and an objection based on attorney-client privilege should be overruled because that is not a privileged communication. Clearly that is not the law.

8

Accordingly, the Court sustains defendants' objection to that extent.

The Court must then determine the scope of Sprint's waiver. Citing cases from various other circuit courts, the Federal Circuit has explained the traditional rule as follows:

> The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not. There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.

*See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005) (citations omitted); *see also United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998) ("The waiver [of the attorney-client privilege] covers any information directly related to that which was actually disclosed.") (citing 8 Charles A. Wright, et al., *Federal Practice and Procedure* § 2016.2).

Moreover, Rule 502 provides that if a disclosure in a federal proceeding waives the attorney-client privilege, the waiver extends to undisclosed communications only if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." *See* Fed. R. Evid. 502(a). The Explanatory Note to Rule 502 offers the following explanation:

> The rule provides that a voluntary disclosure in a federal proceeding . . ., if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

*See id.* adv. cmte. explan. notes (citations omitted); *see also In re Urethane Antitrust Litig.*, 2011 WL 322675, at *3 (D. Kan. Jan. 31, 2011) (citing Rule 502(a) and explanatory note).[4]

The Court thus considers the ultimate question of fairness in determining the scope of Sprint's waiver. As set forth above, the waiver here was limited to the statement that an outside law firm gave Sprint the legal advice that Vonage had infringed 43 patents. It certainly cannot be assumed that such information concerning Vonage's infringement will be relevant in the present actions involving different defendants, but because some of the same patents are at issue here, it is possible that some portion of the law firm's analysis could prove relevant. Fairness dictates that defendants be permitted to test the truth of the statement of the legal advice received, at least for purposes of discovery. Thus, the Court concludes that Sprint should be deemed to have waived the attorney-client privilege with respect to the specific subject of the advice received by

---

[4]The Magistrate Judge noted that, although Rule 502 was not enacted until 2008, after the *Vonage* trial, the parties had presumed its application here, and that Congress had noted in enacting the rule that it did not intend to alter existing substantive law.

Sprint from the law firm concerning whether Vonage had infringed Sprint's patents. There is no basis to extend the scope of the waiver to the broader subject of Sprint's actions generally to investigate possible infringement by Vonage.

Accordingly, within 14 days of the date of this order, Sprint must modify its privilege log, and it must produce as appropriate all documents that (a) are responsive to Request No. 43 and fall within the scope of the waiver as determined by this Court and (b) are not protected by other objections that have not been overruled.

### C. *Implicit Waiver – Attorney-Client Privilege*

Defendants argue that, even if Sprint did not explicitly waive the attorney-client privilege with respect to certain topics by disclosing privileged information in the *Vonage* trial, Sprint has impliedly waived the privilege. Defendants rely on the waiver doctrine set forth by this Court in *Williams v. Sprint/United Management Co.*, 464 F. Supp. 2d 1100, 1104-05 (D. Kan. 2006) (Lungstrum, J.). In *Williams*, the Court noted that the Tenth Circuit had recognized three general approaches used by courts for waiver of the attorney-client privilege, and it predicted that the Tenth Circuit would likely adopt the *Hearn* intermediate approach. *See id.* at 1104 (citing *Frontier Ref. Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998)). The Tenth Circuit quoted from the case of *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), in listing the requirements for waiver under that test:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant

> to the case; *and* (3) application of the privilege would have denied the opposing party access to information vital to its defense.

*See Frontier*, 136 F.3d at 701 (quoting *Hearn*, 68 F.R.D. at 581) (emphasis added by Tenth Circuit). The Tenth Circuit noted that in the case before it, the third condition had not been established in light of the availability of other sources for evidence. *See id.* In *Williams*, after listing the three requirements from *Hearn*, the Court noted *Hearn*'s further description of the doctrine:

> A court, then, should find that the party asserting a privilege has impliedly waived that privilege through his own affirmative conduct when the party "places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure would [be] manifestly unfair to the opposing party."

*Williams*, 464 F. Supp. 2d at 1104-05 (brackets in original).

In this case, the Magistrate Judge addressed and rejected this argument in ruling with respect to Topic 3, as follows:

> The court finds this argument tenuous at this point in the instant litigation. First, defendants have not demonstrated that implicit waiver could have been found in *Vonage*, even if it had been asserted. Specifically, defendants have not demonstrated that Sprint relied on the advice or communications of its counsel to prove a claim or justify certain conduct on Sprint's part, nor that if Sprint had so done, it was "manifestly unfair" to Vonage. Second, defendants have not presented any support for their inferred argument that implicit waiver (in contrast to subject matter waiver based on explicit waiver) in one case can carry over to a subsequent case. Given the fairness consideration at issue in implicit waiver situations—i.e., manifest unfairness to the opposing party—the court is not persuaded that implicit waiver automatically carries over to subsequent cases. Finally, defendants have not demonstrated that Sprint plans to rely on the advice that counsel gave it with respect to possible infringement *by Vonage* to prove a claim *in this case*. The court will follow the approach taken in *Williams* and *New Jersey v. Sprint* by

12

> allowing defendants to revisit this issue should Sprint "affirmatively and voluntarily inject the reliance on counsel issue at trial or in subsequent briefing" in *this* action.

(Emphasis in original, footnotes omitted.)

Sprint argues that defendants have waived this specific waiver argument by failing to raise it sufficiently before the Magistrate Judge. It is true that defendants have refined this argument in making it to this Court, in the sense that they did not specifically argue below that Sprint, alternatively, had impliedly waived the privilege even if the information disclosed in the *Vonage* trial was not privileged. Nevertheless, the Court concludes that defendants did sufficiently raise the issue of implicit waiver before the Magistrate Judge. In their brief to the Magistrate Judge, defendants did set forth the governing law on implicit waiver, as set forth above, and the Magistrate Judge did directly address implicit waiver in his orders, at least with respect to Topic 3. Thus, defendants are not precluded from making this argument to this Court.[5]

The Court also rejects defendants' argument that the Magistrate Judge did not apply the correct test for implicit waiver. Apparently, defendants would rely only on this Court's further description of the test from *Hearn*, quoted above, that requires only a showing that Sprint affirmatively placed the information at issue for its benefit and that

---

[5] It is understandable that the Magistrate Judge addressed this issue only with respect to Topic 3 because defendants only made a specific argument for implicit waiver in the section of their brief addressing that topic. Nevertheless, the Court will not preclude defendants from making the argument in this Court with respect to all four topics. The Court declines defendants' invitation to remand the issue for consideration of the issue by the Magistrate Judge as it relates to the other three topics.

13

fairness demands waiver of the privilege. Thus, defendants take issue with the Magistrate Judge's consideration of whether Sprint relied on the privilege to prove a claim or justify certain conduct. That analysis, however, is consistent with the requirement, from *Hearn* itself, that the privilege have been asserted as the result of some affirmative act. Defendants also appear to take issue with Sprint's insistence that defendants show that the information is vital to their defense, but that requirement is taken straight from the Tenth Circuit's quotation of the test from *Hearn*. Moreover, the Magistrate Judge explicitly addressed the issue of fairness, which defendants would make the key consideration for this analysis.

The Court agrees with the analysis of this issue by the Magistrate Judge, and it therefore rejects defendants' implicit waiver argument. First, the Court agrees that the issue is not whether Sprint implicitly waived the privilege by placing privileged information at issue in the *Vonage* case. Defendants have cited no authority (even after the absence of authority was noted by the Magistrate Judge) to support the position that an implicit waiver in one case may carry over to a later case involving the same party. Rather, the test, as enunciated in *Hearn*, requires that the party asserting the privilege have placed privileged information at issue in the present case, such that fairness demands rejection of the privilege in the present case. In arguing to the Magistrate Judge, defendants focused entirely on the testimony and attorney statements in the *Vonage* trial; thus, the Magistrate Judge correctly ruled not only that defendants had failed to establish waiver in *Vonage*, but also that they had failed to show that waiver

14

was justified in the present case.

Defendants now argue to this Court that the *Vonage* proceedings are relevant to this inquiry because Sprint is likely to adopt the same strategy—and make the same statements and offer the same testimony—in the present case. Topics 3 and 4, however, involve Sprint's investigation into infringement *by Vonage* and authorization for Sprint to contact and sue *Vonage*. Vonage is not a party to the present actions, and it is therefore unlikely that Sprint will propound testimony on those particular topics in the present case. Defendants may believe that Sprint will offer testimony about its investigation of infringement by them and its decision to sue them; but defendants have not offered any basis for this Court to conclude that Sprint's investigation of them was at all similar to its investigation of Vonage. Even though the Magistrate Judge specifically noted this disconnect between the investigation of Vonage and the claims in this case, defendants failed to address this point in its briefs to this Court. Accordingly, at least with respect to Topics 3 and 4, the Magistrate Judge did not clearly err in adopting a wait-and-see approach, by which he rejected the argument at the present time, but left open the door for defendants to revisit the issue if Sprint places its reliance on counsel at issue in the present actions.

The Court also rejects the implicit waiver argument as it relates to all four topics for other reasons. The Court does not believe that Sprint—even if it offers the same testimony from *Vonage* in this case—will have sufficiently placed the privilege and its reliance on counsel at issue in the litigation for purposes of the *Hearn* analysis. As the

15

Magistrate Judge noted, defendants have not explained how Sprint will thus have relied on the privilege to justify some conduct or support some claim. Defendants have not provided any authority to support application of the implicit waiver doctrine in this context, where a party has simply referred to its consultation and reliance on counsel in explaining its decisions to file patent applications and bring suit, but where that reliance on counsel is not germane to the claims. The Court is not persuaded that a party loses the attorney-client privilege with respect to conversations containing legal advice simply by bringing the lawsuit that resulted from following that advice. Nor have defendants addressed how the privileged information is vital to its defense, as required under this test. Thus, to explain it in the alternative terms set out in *Williams*, in this situation fairness does not demand that the privilege be pierced simply because Sprint might offer testimony (as it did in *Vonage*) about unprivileged facts and general topics of discussions with counsel.

Moreover, Sprint might not succeed in placing privileged information at issue in the present case for the reason that Sprint's diligence in investigating the patentability of the inventions or infringement by other parties does not seem especially relevant here. It does not appear that Vonage objected at trial to the statements and testimony at issue here, and thus the Court was not called upon to rule on the relevancy of those statements and testimony; but certainly there is no guarantee that Sprint will be able to pursue these

16

topics at any length at trial if objections are asserted.[6]

Finally, defendants have failed to explain why it could not obtain in discovery similarly unprivileged facts—facts sufficient to rebut or test Sprint's unprivileged assertions concerning underlying facts, the general topics of its discussions with its attorneys, the acts and services performed by those attorneys, and the general scope of the representation. Defendants generally complain that Sprint should not be allowed to reference at trial its counsel's diligence in investigating its patents and claims if defendants are not permitted discovery needed to test and possibly rebut those assertions of diligence. The amount and type of work performed by the attorneys is not protected by the attorney-client privilege, however, and defendants are therefore free to propound discovery on those issues (subject to other applicable objections, of course). That diligence does not necessarily place at issue the particular advice given by Sprint's counsel, however, and therefore fairness does *not* demand that defendants be allowed access to such privileged communications.

Accordingly, the Court rejects defendants' implicit waiver argument, and it therefore overrules defendants' objections on that issue.


IT IS THEREFORE ORDERED BY THE COURT THAT defendants' objections (Doc. # 245) to the Orders by which the Magistrate Judge denied defendants' motion to

---

[6]The relevancy of such testimony could be appropriately raised by motion in limine before trial.

compel are **sustained in part and overruled in part.**  The Court concludes that Sprint did waive the attorney-client privilege with respect to the subject of an outside law firm's legal advice concerning possible infringement by Vonage, and defendants' objections are sustained to that extent.  Within 14 days of the date of this order, Sprint must modify its privilege log and produce as appropriate all documents responsive to Request No. 43 that fall within the scope of the waiver as determined by this Court (subject to any other remaining applicable objections).  The objections are otherwise denied.

    IT IS SO ORDERED.

    Dated this 22nd day of July, 2014, in Kansas City, Kansas.

                                      s/ John W. Lungstrum
                                      John W. Lungstrum
                                      United States District Judge