IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS            )
COMPANY L.P.,                    )
                                 )
                 Plaintiff,      )
                                 )
        v.                       )        Case No. 11-2684-JWL
                                 )
COMCAST CABLE COMMUNICATIONS     )
LLC, et al.,                     )
                                 )
                 Defendants.     )
_____)

## MEMORANDUM AND ORDER

This case comes before the Court on defendants' objections (Doc. # 409) to the order by which the Magistrate Judge rejected defendants' claim that a particular e-mail was privileged and granted plaintiff's motion to compel (Doc. # 388).[1]  For the reasons set forth below, the objections are **overruled**, and defendant Comcast shall produce to plaintiff an unredacted copy of the e-mail by **November 7, 2014**.

_____

[1]The Comcast defendants ("Comcast") originally produced and then clawed-back the e-mail in question; plaintiff moved to compel production of the e-mail by Comcast (and certified that it had conferred with counsel for Comcast; Comcast's counsel filed a response brief on behalf of Comcast; and the Magistrate Judge issued his order only in the case involving Comcast (Case No. 11-2684).  Nevertheless, the objections to that order, which included all three case captions and which were filed and electronically signed by counsel for the Time Warner defendants (defendants in Case No. 11-2686), with counsel for Comcast and for Cable One (Case No. 11-2685) also listed, appear to have been submitted on behalf of all defendants in the three consolidated cases.  Plaintiff has not raised any issue about the other defendants' standing to object to this order; but because the Magistrate Judge issued his order only in Comcast's case, this Court has done likewise here.

I.    **Background**

In this action and two other consolidated actions, Sprint asserts claims of patent infringement against various defendants.  In September 2007, the undersigned presided over a trial of Sprint's patent infringement claims against the Vonage defendants, which involved some of the same patents that are at issue in the present cases.  Prior to that trial, the Dreier law firm was jointly retained by Comcast and two other cable companies (Time Warner and Cox); according to a declaration by one of the Dreier attorneys involved, Dreier was retained "to review the . . . *Sprint v. Vonage* proceedings and to provide related legal advice and legal services."

On October 3, 2007, a Dreier attorney sent an e-mail to another Dreier attorney and to in-house counsel at the three cable companies.  The subject of the e-mail was "Madonna and Cable References . . ."  Attached to the e-mail was a copy of a prior art reference.  The e-mail stated:

> Attached please find a copy of the Madonna reference upon which Vonage relied at trial.  Also, the following is a listing of references to cable companies in the trail [*sic*] transcript.  Please feel free to contact me if you have any questions.

The remainder of the e-mail was a list of 11 page references from the transcript with a phrase summarizing the content of each citation.  For instance, the first reference was as follows: "p. 190-191 - description of Sprint's support to the cable companies."  The final reference was as follows: "p. 1880-1882 - description of timeline where cable companies and telephone companies provide VoIP; reference to Sprint partner [*sic*] with

TimeWarner."

Comcast produced the e-mail in discovery in this action, but after Sprint referred to the document in its own discovery responses, Comcast clawed-back the document, asserting attorney-client privilege, pursuant to procedures in place in the case.  Sprint moved to compel production of the document, and the Magistrate Judge ordered that the document be submitted for *in camera* review.  Subsequently, by order of September 12, 2014, the Magistrate Judge granted the motion and ordered production of the document. The Magistrate Judge reasoned as follows:

> Comcast asserts that the attorney-client privilege protects the E-mail from disclosure because the E-mail is a confidential communication from an attorney to his joint clients made in the course of providing legal advice.  Comcast describes the E-mail as follows: "Mr. Kaufman . . . distilled many pages of transcript to one page of points selected by him, and presented his analysis to his clients in his own words."  Perhaps if Comcast's characterization of the E-mail were accurate, the court would place more credence in Comcast's privilege assertion.  But the court finds that Comcast completely oversells the substance of the [E-mail].  As set out above, the E-mail did *not* contain any analysis.  Nor did it include legal advice from the attorney.  It is simply a [bare]-bones listing of citations to a public transcript.

> . . .

> The E-mail here is akin to a "general description of the work performed by the attorney."  It shows that the attorney searched the transcript for references to cable companies.  Comcast has not met its burden to show, however, that the purpose of the E-mail was to provide legal advice.  On its face, the E-mail does not report legal strategies or attorney thought processes; legal advice is not the subject of the E-mail. Indeed, there is no privileged information in the E-mail to redact prior to the E-mail being disclosed.  Accordingly, the E-mail is not privileged.

(Footnotes omitted.)  In light of that conclusion that the e-mail was not protected by the

privilege, the Magistrate Judge declined to reach plaintiff's alternative argument that any privilege had been waived by the disclosure of the communication to the other cable companies that hired the attorney.  Defendants now seek review of the Magistrate Judge's order.

## II.   Governing Standard of Review

With respect to a magistrate judge's order relating to nondispositive pretrial matters, the district court does not conduct a de novo review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate judge's order is "clearly erroneous or contrary to law."  *See First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *See Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III.   Analysis

"The burden of establishing the applicability of the attorney-client privilege rests on the party seeking to assert it."  *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010) (internal quotation and citation omitted).  "The privilege must be

4

strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle utilizing all rational means for ascertaining truth." *See id.* (internal quotations and citations omitted).

Defendants first argue that the order is contrary to law because the Magistrate Judge applied the wrong legal standard.  Specifically, defendants argue that a communication from an attorney to his client is privileged if it was made "in the course of" giving legal advice or if it "relates to" legal advice or strategy; and that the Magistrate Judge improperly applied a narrower standard by considering whether the document here actually contained legal advice or strategies.  Thus, in essence, defendants contend that *any* communication made by the attorney to the client during the course of the client's engagement of the attorney for legal advice is privileged, whatever the content.  The Court concludes, however, that the Magistrate Judge did not err in refusing to apply such a standard, as the law is clear that the privilege does not protect all attorney-client communications during the course of such an engagement.

The following description of the scope of the privilege by the Tenth Circuit is determinative here:

> The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.  The mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege; rather the communication between a lawyer and client must relate to legal advice or strategy sought by the client.

Although this description of the attorney-client privilege suggests the privilege only applies one way, operating only to protect the client's communications to a lawyer, it is generally also recognized that the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client. However, when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.

. . .

. . .   These questions thus requested "conduit" information—whether a third party's statement was passed along by the attorney to the client.   Where questions only request information regarding communications where the attorney was acting as a "conduit" for non-confidential information, the client may not invoke the attorney-client privilege.   These questions did not request information regarding privileged legal advice provided by the attorney to his client, nor would the questions tend, directly or indirectly, to require the attorney to reveal the substance of any legal confidence.

*See In re Grand Jury Proceedings*, 616 F.3d at 1182-83 (footnotes and internal quotations and citations omitted).   Thus, the  Tenth Circuit made clear that not all communications from the attorney are privileged; rather, the Court directed the inquiry toward the content of the communication, considering whether that content included legal advice or tended to reveal confidences of the client, or included instead (in that case) merely facts from other sources.   Similarly, judges in this district have applied the maxim that "[a] general description of the work performed by the attorney is not protected by the privilege," *see, e.g., In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005)—a statement of the law that defendants have not challenged in their present objections.

Defendants rely on this Court's statement in *Burton v. R.J. Reynolds Tobacco Co.*,

6

200 F.R.D. 661 (D. Kan. 2001) (Lungstrum, J.), that "[t]he attorney-client privilege protects confidential communications between an attorney and client which occur in the course of giving or requesting legal advice." *See id.* at 669. The Court clearly did not intend that statement to mean, however, that *all* communications in the course of an engagement for legal advice are privileged, without regard to content, as defendants appear to argue in this case. Indeed, in *Burton*, in ruling on whether the privilege applied to a number of documents, the Court examined the content of the particular communications. *See id.* at 669-79. In his order in this case, the Magistrate Judge aptly cited a number of examples of the Court's rulings in *Burton*.

Defendants also quote the Tenth Circuit's statement in *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997), that the privilege protects "an attorney's communications to his client without the qualification that the communications must contain confidential matters revealed by the client earlier to the attorney." *See id.* at 1371. That statement has no relevance here, however, as defendants should well have appreciated. In *Sprague*, the Tenth Circuit made that statement in describing a *broad* approach favored by Kansas courts under a particular Kansas statute. *See id.* at 1370-71. That statute does not apply here, as this case involving federal statutory claims is governed by federal privilege law (as the Magistrate Judge noted in his order). *See id.* at 1368-69.

Defendants argue that any standard narrower than the one that they urge could chill candid communication between attorneys and clients because attorneys would be

forced to monitor each communication to assess whether it contains legal analysis for purposes of the privilege. The Court is not persuaded that the privilege would be so threatened by a rejection of defendants' position. It is black-letter law—and defendants have not disputed—that not every communication between attorney and client is privileged, and attorneys have always had to bear that fact in mind in communicating with their clients. Defendants make the puzzling argument that, even if particular communications do not reveal legal advice or strategies or confidences, their disclosure "in the aggregate" could reveal confidences that the privilege is intended to protect. As the Tenth Circuit has noted, however, if a communication tends to reveal confidential information, it is protected. If it does not, then it should not be protected, regardless of how many such innocuous communications there are. Indeed, in the most absurd example, under defendants' standard, communications stating no more than "yes" or "let's talk about that at the golf course" would be privileged if they were made in the course of a legal engagement; such communications are clearly not privileged, however, as the privilege does not protect the mere fact of a communication or of the relationship between the attorney and client, or the general description of the attorney's work.

Accordingly, the Court rejects the standard urged by defendants, and it concludes that the Magistrate Judge did not act contrary to law in refusing to apply such a standard.

The Court further concludes that the Magistrate Judge did not clearly err in finding that Comcast had not met its burden to show that the e-mail is protected by the attorney-client privilege. The Court has little to add to the Magistrate Judge's

8

characterization of the e-mail (and of Comcast's overselling it), and it agrees that the communication does not contain any legal analysis or advice.  The communication does not reveal any legal analysis performed by the attorney, who merely listed all references to cable companies in the transcript (and who thus did not, as defendants argue, make some analytical decision about what to list).[2]  The document reveals that the attorney was merely acting as a conduit for information from another source (a public transcript). Moreover, the e-mail does not tend to reveal any client confidences or legal advice or strategy; the most it reveals is that the clients asked the attorney to review the transcript for references to cable companies, and such a general description of work performed or requested is not privileged.  Accordingly, defendants' objections to the Magistrate Judge's order are overruled.[3]

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' objections (Doc. # 409) to the Magistrate Judge's Order of September 12, 2014, are hereby **overruled**, and defendant Comcast shall produce to plaintiff an unredacted copy of the e-mail at issue by **November 7, 2014**.

IT IS SO ORDERED.

---

[2]Defendants make no argument that the attachment of and reference to the prior art should be privileged.

[3]In light of this conclusion, the Court need not consider plaintiff's waiver argument.

Dated this 31st day of October, 2014, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge