IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | **CONSOLIDATED CASES** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2684-JWL |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2685-JWL |
| | ) | |
| CABLE ONE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| SPRINT COMMUNICATIONS CO., L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-2686-JWL |
| | ) | |
| TIME WARNER CABLE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER

In these consolidated cases, Sprint Communications Company, L.P. has brought

11-2684-JWL-717.wpd

patent-infringement claims against various defendants who provide Voice over Internet Protocol ("VoIP") services to local cable companies.  In Case No. 11-2686, defendant Time Warner Cable, Inc. ("TWC") has filed a motion to compel Sprint to produce witnesses under Fed. R. Civ. P. 30(b)(6) to testify on eleven noticed topics (ECF doc. 717).  Sprint objects that the topics are irrelevant, overly broad, and/or cumulative of topics on which it has "already provided ample testimony."[1]  For the reasons stated below, TWC's motion is granted in part and denied in part.

**Background**

In response to Sprint's claims that the VoIP services TWC offers infringe Sprint patents, TWC raised the defenses of laches and equitable estoppel.[2]  With respect to laches, TWC maintains that Sprint delayed suing TWC for infringement until 2011, despite the fact that as early as 2003 Sprint had available all the information necessary to bring suit.[3]  With respect to equitable estoppel, TWC maintains that since 2003, Sprint (1) has known that TWC was offering VoIP services to its customers, (2) had a duty to inform TWC that it believed TWC was infringing, and (3) breached that duty by deliberately remaining silent for years.[4]  Sprint, on the other hand, asserts that TWC's equitable defenses fail because, among

---

[1]ECF doc. 761.  Unless otherwise indicated, the ECF citations in this order are to the docket in lead Case No. 11-2684.

[2]Case No. 11-2686, ECF doc. 36 at ¶ 94 (TWC's Answer).

[3]ECF doc. 739-2 at 133.

[4]*Id.* at 134–35.

other things, Sprint did not learn of TWC's intent to infringe until 2009.[5]

TWC served a number of deposition notices to Sprint under Rule 30(b)(6), listing topics that ostensibly relate to TWC's equitable defenses, such as the timing of Sprint's knowledge of certain activities by TWC and the context of TWC's decision to "go it alone." TWC now moves to compel Sprint to produce a witness on the following eleven topics: in TWC's First Rule 30(b)(6) Deposition Notice, Topic 23; in TWC's Second Rule 30(b)(6) Deposition Notice, Topics 32–34, 36, 62, and 70; and in TWC's Third Rule 30(b)(6) Deposition Notice, Topics 3–6.

### Timing of Sprint's Objections

Before addressing the substance of Sprint's objections to the topics, the court will consider TWC's argument that Sprint waived the objections, either by failing to comply with deadlines agreed upon by the parties or by serving the objections six minutes after the discovery deadline. The court rejects both waiver arguments.

In January 2015, the parties began discussing ways to streamline fact discovery remaining in this case. Over the course of a telephonic meet-and-confer discussion and follow-up e-mails, the parties agreed that by February 19, 2015, each would offer dates for depositions of noticed Rule 30(b)(6) topics and that the depositions would be scheduled by February 25, 2015.[6] They further agreed that depositions that could not be scheduled to take

---

[5]ECF doc. 739-1 at 4.

[6]ECF doc. 719-17.

place before the close of fact discovery on March 13, 2015, would be scheduled to occur as soon as possible after that date.[7]

There is no dispute that Sprint did not offer witnesses or deposition dates for TWC's noticed Rule 30(b)(6) topics by February 19, 2015, nor even by February 25, 2015. Nevertheless, the court cannot say that Sprint wholly waived its objections to the noticed topics.  The court certainly does not discount the use of informal agreements and the value of parties attempting to adhere to them, but the agreement at issue is completely silent as to the consequence of a party's failure to meet the targeted deadlines.  TWC has cited no case to support its argument that a party may waive its discovery objections by breaching an informal agreement where the parties to the agreement never discussed the possibility of waiver.

Moreover, the actions of both parties indicate that the parties did not view the deadlines as firm.  On February 27, 2015, TWC sent an e-mail to Sprint criticizing Sprint's failure to offer deposition dates by the February 19, 2015 deadline, but then asking Sprint to provide the dates by March 2, 2015.[8]  And although TWC offered a date on February 19, 2015, for Howard Pfeffer's deposition,[9] it did not designate the noticed topics that Mr.

---

[7]*Id.*

[8]ECF doc. 761-13 at 3–4.

[9]ECF doc. 762-17 at 2.

Pfeffer would testify about until March 10, 2015.[10]

Sprint, for its part, began complaining about the "cumulative nature" of TWC's noticed topics by February 27, 2015. Sprint sent an e-mail to TWC on that date, asserting that "TWC's Second and Third 30(b)(6) Notices consist of cumulative topics addressed by prior topics on which Sprint has already designated witnesses."[11] Sprint repeated this sentiment in an e-mail on March 2, 2015, stating that Sprint was "working diligently to get [TWC] the deposition dates," but that the process was hindered by TWC's "last-minute decision to serve ~50 30(b)(6) topics—many if not most of which have already been covered—both in 30(b)(6) deposition and many, many 30(b)(1) depositions."[12] Counsel for the parties met on March 9, 2015, and Sprint informed TWC that it "took issue with the cumulative and duplicative nature of many topics in TWC's Second 30(b)(6) Notice," and that its formal objections to certain topics were forthcoming.[13] In none of its communications did Sprint consent to presenting a witness on every noticed topic, and the underlying tone of

---

[10]ECF doc. 803-1.

[11]ECF doc. 762-19 at 2. Sprint did set a date for TWC to depose Harley Ball on twelve noticed topics, but notably not on any of the topics at issue in the current motion. *Id.* Thus, the court rejects TWC's contention that this e-mail somehow "gave the distinct impression" that Sprint would not be objecting to the at-issue topics. ECF doc. 805 at 8.

[12]ECF doc. 761-13 at 2. *See also* ECF doc. 759-2 at 3 (noting that TWC served fifty-five Rule 30(b)(6) topics on Sprint between January 15, 2015, and February 19, 2015).

[13]ECF doc. 759-2 at 4.

the communications instead indicated the opposite.[14]

Finally, the court will not deny Sprint the opportunity to develop the merits of its arguments based on a seven-minute filing delay. Sprint concedes that it e-mailed TWC its formal objections to TWC's Second and Third Rule 30(b)(6) Notices on March 14, 2015, at 12:06 a.m.—seven minutes after the March 13, 2015 close of fact discovery. This court has long expressed its preference for resolving disputes on their merits, however, rather than on technicalities.[15] "Generally the court has few occasions and little time to devote to a detail like the one here raised . . . ."[16] TWC has not demonstrated that it has been prejudiced by the seven-minute, middle-of-the-night filing delay;[17] and there is no indication that Sprint's

---

[14]TWC asserts that Sprint's representation that it was "working diligently to get the deposition dates" misled TWC into believing that Sprint would produce a witness on every topic. However, when Sprint's communications are viewed as a whole, TWC's alleged belief in this regard seems untenable. Separately, the court notes that between February 27, 2015, and March 31, 2015, Sprint did designate five witnesses to testify on a number of TWC's noticed Rule 30(b)(6) topics. *See* ECF doc. 762-19 (designating Harley Ball to testify about twelve topics); ECF doc. 761-14 (designating Keith Cowan to testify about three topics); ECF doc. 761-15 (designating Mike Logan to testify on nine topics); ECF doc. 759-18 (designating Sal Leggio and David Barland to testify on damages topics).

[15]*See, e.g., Settle v. Midland Funding, LLC*, No. 13-2308, 2013 WL 4437229, *1 (D. Kan. Aug. 19, 2013); *Swinney v. State Farm Fire & Cas. Co.*, No. 10-2021, 2011 WL 209372, *2 (D. Kan. Jan. 21, 2011).

[16]*Outley v. Coca Cola Enters., Inc.*, No. 97-2056, 1998 WL 118070, at *1 (D. Kan. March 11, 1998) (granting motion for leave to serve discovery one day after the close of discovery).

[17]TWC argues that "[b]ecause of Sprint's delay, there are eleven additional topics on which Sprint will need to produce witnesses, now almost three months past the close of fact discovery." ECF doc. 805 at 12. However, the fact that Sprint may need to produce witnesses after the close of discovery would be true even if Sprint had served its objections

negligible delay was the result of bad faith or an attempt to seek an unfair advantage against TWC.

Finding no waiver of Sprint's objections to the noticed topics, the court proceeds to address the objections on their merits.

**Notice One, Topic 23; Notice Two, Topic 70**

Topic 23 of TWC's First Rule 30(b)(6) Deposition Notice and Topic 70 of TWC's Second Rule 30(b)(6) Deposition Notice both seek testimony regarding "Sprint's beliefs as to when and how TWC infringed its patents."[18]  Specifically, Topic 23 requests testimony about:

> When and how Sprint first learned or received information supporting its belief that TWC was allegedly infringing each asserted claim of the Patents-in-Suit, including when and how it determined that TWC was allegedly infringing each asserted claim on an element-by-element basis.[19]

Sprint objected to Topic 23 as overly broad and unduly burdensome to the extent that it sought information on an element-by-element basis (objections that TWC does not challenge), but agreed to designate a corporate witness to testify generally as to "[w]hen and how Sprint first learned or received information supporting its belief that TWC was allegedly infringing the Patents-in-Suit."[20]

---

seven minutes earlier.

[18]*Id.* at 14.

[19]ECF doc. 719-1 at 9.

[20]ECF doc. 762-4 at 15.

Topic 70 requests testimony about:

Sprint's consideration as to whether or not any of the following TWC systems or activities infringed any of its Patents-in-Suit, and its reason for such consideration: (1) TWC's offering of VoIP service at any time using Pine Tree Networks (a/k/a/ CRC Communications of Maine), (2) TWC's offering of VoIP in New Hampshire from around 2005–2007 as part of its New Hampshire Go-It-Alone undertaking, (3) TWC's offering of VoIP as a Go-It-Alone initiative in South Carolina around 2006–2007 as part of the Wildcat migration, (4) TWC's offering of VoIP service at any time using MCI/Verizon, (5) TWC's offering of VoIP service at any time using Sprint, (6) TWC's offering of VoIP as part of its Go-It-Alone initiative beginning in 2010.[21]

TWC argues that these topics "go to the heart of TWC's laches and equitable estoppel defenses in demonstrating that Sprint knew TWC was offering allegedly infringing services, for years, and yet did not file suit until 2011."[22]  TWC further contends that these topics are relevant to Sprint's damages' analysis because Sprint's expert used October 2010 as a commencement date for the alleged infringement and if the alleged infringement actually commenced earlier, the expert's reasonable-royalty analysis is fatally flawed.

Sprint does not contest the relevancy of Topics 23 and 70, but instead argues that the topics seek information cumulative and duplicative of other topics upon which Sprint has already provided witnesses.  Under Fed. R. Civ. P. 26(b)(2)(C)(i), the court must limit otherwise relevant discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less

---

[21]ECF doc. 719-19 at 11.

[22]ECF doc. 721 at 17–18.

expensive."  "Thus, in certain circumstances, if one discovery request seeks information duplicative of another, the Court must limit the discovery even if both are relevant requests."[23]  "The purpose of this rule is to guard against redundant or disproportionate discovery; however, the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."[24]  In other words, "the principles outlined in Rule 26(b)(2)(C) involve balancing the benefit of the proposed discovery with its likely burdens."[25]  Where a party is questioned on a topic in a Rule 30(b)(6) deposition, a second deposition of the same topic "would most likely be unreasonably cumulative and therefore not allowed under Rule 26(b)(2)(C)(i)."[26]

Sprint states that it has produced its Vice President of Intellectual Property, Harley Ball, as a Rule 30(b)(6) witness on topics that subsume Topics 23 and 70.  The court agrees. Mr. Ball testified, for example, on Topic 27 of TWC's Second Rule 30(b)(6) Deposition Notice, which sought,

> Separately for each Patent-in-Suit, all facts and circumstances  surrounding
> when Sprint first concluded that TWC . . . infringed one of more of the
> Patents-in-Suit, or otherwise concluded that a license was required under one

---

[23] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269, 2011 WL 3241432, at *3 (D. Kan. July 29, 2011).

[24] *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings*, No. 07-2388, 2008 WL 3895474, at *3 (D. Kan. Aug. 21, 2008) (internal quotations and citation omitted).

[25] *Id.*

[26] *Id.* at *5.

or more of the Patents-in-Suit.[27]

All facts and circumstances surrounding when Sprint first concluded that TWC infringed a patent-in-suit (Topic 27) necessarily entail those facts surrounding when Sprint first learned or received information supporting its belief that TWC was infringing a patent-in-suit (Topic 23).[28]  Likewise, all facts and circumstances surrounding when Sprint first concluded that TWC infringed a patent-in-suit (Topic 27) by definition include whether and why Sprint considered various TWC systems and activities to have infringed a patent-in-suit (Topic 70). The court rejects TWC's attempt to parse the wording of the topics such that Topics 23 and 70 apply to the 2003 time frame when Sprint first learned of TWC's activities, and Topic 27 only applies to the 2011 time frame when Sprint decide to pursue patent litigation—this limiting interpretation of the three topics is simply not supported by their plain language.[29]

Mr. Ball also was designated to testify on Topics 28 and 29 of TWC's Second Rule 30(b)(6) Deposition Notice, which sought information about "Sprint's consideration of

---

[27]ECF doc. 719-19 at 7.

[28]Topic 23 is also likely covered by another topic on which Sprint designated Mr. Ball to testify: Topic 6 of Defendants' Second Common Notice seeking testimony about "Any facts, documents or communications considered by Sprint before deciding to file this Lawsuit."  ECF doc. 762-1 at 9.

[29]The court recognizes that Sprint previously agreed to produce a witness on Topic 23, subject to its overbreadth/burdensome objection.  Although Sprint ultimately did not designate a witness to address Topic 23 specifically, it did produce Mr. Ball to testify on Topic 27, which subsumes Topic 23, excluding the element-by-element analysis that was the subject of Sprint's unchallenged objection.

whether or not to pursue patent litigation against or patent license negotiations with" TWC (Topic 28) or MCI/Verizon or Pine Tree/CRC (Topic 29) "relative to one or more of the Patents-in-Suit."[30]  Thus, TWC had another opportunity to question Sprint about Sprint's consideration of whether the services provided by TWC in various markets, whether alone or using Pine Tree/CRC or MCI/Verizon networks, infringed any asserted patent (Topic 70).[31]

The court therefore finds Topics 23 and 70 duplicative of other discovery requests, such that compelling Sprint to produce a corporate witness on them would be redundant.[32] TWC has set forth no facts to suggest that additional testimony on these (albeit relevant) topics is necessary to ensure that it has a fair opportunity to develop its case.  Thus, the Rule 26(b)(2)(C) balance weighs in Sprint's favor.  TWC's motion is denied as to these topics.

**Notice Two, Topic 62**

Like Topics 23 and 70, Topic 62 of TWC's Second Rule 30(b)(6) Deposition Notice seeks testimony related to the timing of Sprint's knowledge concerning allegedly infringing

---

[30]ECF doc. 719-19 at 7.

[31]TWC's memorandum in support of its motion to compel states that TWC served Topics 32 and 70 "to determine whether Sprint considered Pine Tree, MCI, or its early go it alone initiatives infringing."  ECF doc. 721 at 18.

[32]The court recognizes that TWC has filed a motion to compel Sprint to provide more complete testimony on Topics 27–29, among others.  ECF doc. 729.  *See also* ECF doc. 739 at 6.  Should that motion be granted, TWC will of course be able to discover additional information on overlapping Topics 23 and 70.

activity.  Specifically, Topic 62 requests testimony about:

> Sprint's knowledge of TWC's efforts to provide VoIP services using CRC [a/k/a Pine Tree Networks] and MCI, including its knowledge of the architecture used to connect TWC's network to the PSTN [public switch telephone network] using MCI and CRC."[33]

TWC asserts that Sprint's testimony on this topic will demonstrate that "Sprint was aware that TWC was providing allegedly infringing services as early as 2003."[34]

Sprint does not challenge the relevance of Topic 62, but instead objects that it is cumulative and duplicative of topics on which Sprint has already produced Rule 30(b)(6) witnesses.  In addition to Mr. Ball, Sprint states that it produced Karin Leach and Michael Talley, who respectively testified on Topics 9 and 14 of TWC's First Rule 30(b)(6) Deposition Notice.[35]

Topic 9 sought information about:

> Sprint's knowledge that TWC was partnering with MCI and Pine Tree Networks to provide VoIP services in other regional markets.[36]

Topic 14 sought information about:

> Sprint's knowledge of the way in which TWC provided VoIP services with

---

[33]ECF doc. 762-6 at 20.

[34]ECF doc. 721 at 23.

[35]ECF doc. 719-1 at 7–8.

[36]*Id.* at 7.

MCI and others from December 2003 through the present.[37]

Sprint argues that, taken together, the language of Topics 9 and 14 mirror the language of Topic 62.

Other than the ordering of the words, the court finds that the difference between Topic 62 and Topic 9 is the specific inclusion in Topic 62 of language seeking Sprint's knowledge of the architecture used by MCI and CRC/Pine Tree to connect TWC's network to the PSTN. In testifying on Topic 9, Ms. Leach stated that she was not designated or prepared to testify on the "technical elements of the way Time Warner Cable offered VoIP."[38] Thus, it does not appear that Sprint interpreted Topic 9 to cover information about the architecture used to connect to TWC's network to the PSTN.

Sprint argues, however, that Topic 14 covers this technical portion of Topic 62 by seeking Sprint's knowledge of "the way in which TWC provided VoIP services with MCI and others." TWC responds that, to the contrary, Topic 14 does not subsume this important portion of Topic 62 because Topic 14 does not mention Pine Tree, nor ask about connection to the PSTN.

---

[37]*Id.* at 8.

[38]ECF doc. 805-15 at 7. *See also id.* at 3 (Q. Did you understand that Pine Tree and Time Warner Cable were providing a service that connected to the public switch telephone network? A. I don't have any information about what was being offered. Q. Do you believe that Time Warner Cable and Pine Tree could have offered a voice service to customers without connection to the PSTN? . . . A. I have no knowledge about what they could or could not do.").

Although the court finds that Topic 14's reference to "others" technically must include Pine Tree, and that its reference to "*the way* in which TWC provided VoIP services" could include the *architecture* used to connect TWC's network to the PSTN, this connection is simply too tenuous for the court to conclude that Topic 62, on its face, seeks testimony duplicative or cumulative of Topics 9 and 14. Moreover, Sprint has not demonstrated that the testimony of Ms. Leach or Mr. Talley actually addressed Sprint's knowledge of the architecture used by MCI and CRC/Pine Tree to connect TWC's network to the PSTN. As noted above, Ms. Leach was not prepared by Sprint to testify as to the technical aspects of TWC's architecture and did not have any information about whether Pine Tree and TWC were providing a service that connected to the PSTN.[39] And Mr. Talley testified that he "did not recall any knowledge of Pine Tree."[40] Whereas Sprint asserts that this testimony "confirms Sprint's long-standing position that it had no knowledge about the architecture employed by Pine Tree or other TWC partners to connect to the PSTN,"[41] this testimony could also simply indicate that Sprint did not designate and prepare a corporate representative to testify on this particular aspect of Topic 62.[42]

---

[39] *See supra* note 38 and accompanying text.

[40] ECF doc. 759-20 at 3–4.

[41] ECF doc. 761 at 20.

[42] The court notes that Ms. Leach and Mr. Talley were deposed both in their individual capacities and as Rule 30(b)(6) designees of Sprint, making it possible that although each was personally unaware of TWC's architecture, Sprint may have knowledge of TWC's

Because Topic 62 cannot be deemed redundant, the Rule 26(b)(2)(C) balance weighs in TWC's favor.  The motion to compel is granted as to this topic.

**Notice Two, Topic 32**

Topic 32 of TWC's Second Rule 30(b)(6) Deposition Notice requests Sprint's testimony about:

Sprint's layoffs or reductions in force from 2000 through present.[43]

TWC assert that information on this topic is relevant to its equitable defenses and thus is discoverable under Fed. R. Civ. P. 26.

Sprint objects to this topic as facially overbroad and irrelevant because it "solicits testimony regarding every decision to discontinue employment of unidentified employees over a fifteen year time period" and does not appear to seek information related to TWC's defenses.[44]  The court agrees that there is no obvious connection between Sprint's layoffs and reductions in force ("RIFs") in the last fifteen years and TWC's equitable estoppel or laches

---

architecture.

[43]ECF doc. 762-6 at 7.

[44]ECF doc. 761 at 22.  *See also Cardenas v. Doral Juvenile Grp., Inc.*, 230 F.R.D. 611, 616 (D. Kan. 2005) (a discovery request is facially irrelevant if it "does not, on its face, appear" to seek relevant information).  The court rejects TWC's contention that Sprint "implicitly conceded the relevance" of Topic 32 (ECF doc. 721 at 20) when, "in the spirit of efficiency," Sprint offered to designate Rule 30(b)(1) testimony on this topic (ECF doc. 719-41) in a March 11, 2015 e-mail to defense counsel.  Sprint represents that its inclusion of Topic 32 was inadvertent, and that its position was clarified in its March 14, 2015 formal response to TWC's Second Rule 30(b)(6) Deposition Notice.  *See* ECF doc. 719-42 at 7.

defenses.  Accordingly, the burden of proof will switch to TWC to demonstrate the relevance of Topic 32.[45]

Rule 26(b)(1) provides that discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense."  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[46] "Relevancy is broadly construed during the discovery phase, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[47]  Despite this broad discovery standard, however, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."[48]  Rule 26(b)(2)(C)(iii) limits discovery to the extent that "the burden or expense of the proposed discovery outweighs its likely benefit."  Courts in this district have ruled that when the information sought is of only "marginal relevance," the court must consider whether the hardship to the party from whom discovery is sought would outweigh

---

[45]*See Meyer v. DG Retail LLC*, No. 13-2115, 2013 WL 5719508, at *1 (D. Kan. Oct. 21, 2013) ("[I]f the discovery requests appear facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.").

[46]Fed. R. Civ. P. 26(b)(1).

[47]*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010) (quoting *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) and *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004)).

[48]Fed. R. Civ. P. 26(b)(1).

the presumption in favor of broad disclosure.[49]

TWC asserts that Sprint's layoffs are important "in evidencing why TWC decided to go it alone, Sprint's ability to perform wholesale voice service agreements, and to rebut any contention by Sprint that TWC improperly hired away Sprint employees."[50]  To this last point, TWC explains that in Sprint's response to Interrogatory No. 1, Sprint asserted that TWC should not prevail on its equitable defenses because "TWC was actively recruiting, or at least hiring, key Sprint VoIP personnel so that it could deliberately and consciously learn Sprint's proprietary information to enable and justify its infringement."[51] TWC also contends that Sprint's layoffs and RIFs show evidentiary prejudice, namely, "the loss of witnesses with relevant information helpful to TWC's defense."[52] TWC asserts that it seeks evidence showing that Sprint "was laying off significant numbers of its voice employees."[53]

Sprint counters that Topic 32 is worded much too broadly to capture relevant information.  Despite the broad interpretation of relevance at the discovery stage, the court agrees.  First, TWC has not explained what, in particular, it would like to know about the undoubtedly numerous layoffs and RIFs that Sprint, like most large companies, underwent

---

[49]*See High Point*, 2011 WL 3241432, at *6; *DIRECTTV, Inc. v. Pucinelli,* 224 F.R.D. 677, 684 (D. Kan. 2004).

[50]ECF doc. 721 at 19.

[51]*Id.* (quoting ECF doc. 721-10 at 14).

[52]ECF doc. 805.

[53]ECF doc. 721 at 19.

over the past fifteen years.  For example, TWC has not addressed why Sprint's decision to terminate an employee for misconduct would bear any relation to TWC's choice to end its voice partnership with Sprint.  Second, TWC has not explained how layoffs in departments entirely unrelated to the contractual services Sprint was providing TWC would affect TWC's decision whether to renew Sprint's voice services contract or influence Sprint's ability to adequately perform the contractual services.  Finally, TWC has not explained how Sprint's termination of any employee other than key Sprint VoIP personnel who Sprint claims were being actively recruited by TWC supports TWC's argument that it did not, in fact, improperly hire key Sprint personnel.

In the end, Topic 32 seeks a lot of information that cannot possibly be relevant to this case.  TWC has not offered to limit its scope.  Nor has TWC met its burden to show that the information it seeks is more than marginally relevant.  The motion to compel testimony on this topic is denied.

**<u>Notice Two, Topics 33, 34, and 36</u>**

Topics 33, 34, and 36 of TWC's Second Rule 30(b)(6) Deposition Notice seek Sprint's testimony about Sprint's efforts to "rebadge" or outsource employees and to unbundle services provided to TWC.  Specifically, the topics read:

> Topic 33: Sprint's consideration, analysis and/or implementation of, and communications with TWC about, any efforts to rebadge, outsource or offshore its employees from 2000 through present, including any efforts to rebadge, outsource or offshore any employees that supported Sprint's provisioning of wholesale voice services;

Topic 34: Sprint's consideration, analysis and/or implementation of, and communications with TWC about, rebadging employees from Sprint to TWC from 2000 through present; and

Topic 36: Sprint's consideration, analysis and/or implementation of any unbundling or disaggregation of services offered or provided by Sprint to TWC.[54]

Sprint does not contest the relevance of these topics.  Rather, Sprint objects to producing Rule 30(b)(6) witnesses to testify on them because, according to Sprint, the persons most knowledgeable about the topics—former Sprint employees Jim Patterson and Steve Elfman—have already been deposed in their individual capacities under Rule 30(b)(1) and therein testified extensively about the subject matter of the topics.  Sprint proposes to designate the Rule 30(b)(1) testimony as Sprint's Rule 30(b)(6) corporate testimony, arguing that Rule 26(b)(2)(C) limits discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Sprint argues that the burden of further testimony on these topics outweighs its likely benefit.[55]

Sprint's argument fails to recognize the distinct purpose of Rule 30(b)(6) testimony and gives insufficient deference to the wealth of caselaw supporting a party's right to take a corporate deposition, even on topics that were the subject of a Rule 30(b)(1) deposition.

The important distinction between Rule 30(b)(6) testimony and Rule 30(b)(1) testimony was explained in *Miller v. Union Pacific R.R. Co.* as follows:

---

[54]ECF doc. 719-42 at 7–9.

[55]ECF doc. 761 at 23 (quoting Rule 26(b)(2)(C)(iii)).

> With respect to a Rule 30(b)(6) deposition, no distinction exists between the designated corporate representative and the corporation. During the Rule 30(b)(6) deposition, the designated corporate representative does not give his or her personal opinion like an individual does, but rather presents the corporation's position on the topic. In other words, the designee testifies on behalf of the corporation and thus holds it accountable. Most importantly, the designated representative's testimony is binding on the corporation. In contrast, the testimony of a corporation's employee, when taken in his or her individual capacity, does not bind the corporation.[56]

Based on this reasoning, courts have consistently held that the fact that a company's employee was deposed under Rule 30(b)(1) does not insulate the company from producing the same—or another—individual as a corporate representative to give a Rule 30(b)(6) deposition on the same topic.[57] Indeed, Rule 30(b)(6) itself contemplates both individual and

---

[56] No. 06-2399-JAR-DJW, 2008 WL 4724471, at *2 (D. Kan. Oct. 24, 2008) (internal quotations and citations omitted).

[57] *See, e.g., New Jersey v. Sprint Corp.,* No. 03-2071, 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010) ("Even if the substance of the information ultimately provided mirrors that of the testimony given by Sprint's former directors and employees, plaintiff is still entitled to tie down the definitive positions of Sprint itself, rather than that of the individuals who work for Sprint."); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-md-1840, 2009 WL 5064441, at *2 (D. Kan. Dec. 16, 2009) ("[T]he fact that Millican and Allsop addressed the noticed topics when testifying in their individual capacities is of no consequence"); *Miller*, 2008 WL 4724471, at *3 ("Waste Management is entitled to know what the corporation's position is on this topic, and a Rule 30(b)(6) deposition is the proper vehicle to determine that position. In short, the fact that individually-named witnesses have testified concerning a subject is no obstacle to a 30(b)(6) deposition on the same subject."); *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1732369, at *3 (D. Kan. June 11, 2007) (ruling, "just because [a party] may choose to designate certain individuals as its corporate designees whose fact depositions have already occurred does not insulate [the party] from the requirements of Rule 30(b)(6). Such a finding would eviscerate Rule 30(b)(6)."); *Williams v. Sprint/United Mgmt. Co.*, No. 032200, 2006 WL 334643, at *1 & n.1 (D. Kan. Feb. 8, 2006) (distinguishing a Rule 30(b)(6) deposition from the deposition of a witness as an individual).

corporate depositions, stating "[t]his paragraph (6) does not preclude a deposition by any other procedure allowed by these rules."

Sprint argues that because it has offered to designate the individual testimony of Messrs. Patterson and Elfman as Sprint's corporate testimony on Topics 33, 34, and 36, it would be unduly burdensome to submit to a separate Rule 30(b)(6) deposition. This court rejected a similar argument in *Motor Fuel.* Citing Fed. R. Civ. P. 26(b)(2)(C), the defendant in *Motor Fuel* argued that because it was "willing to formally designate [two witnesses'] Rule 30(b)(1) testimony as its Rule 30(b)(6) testimony, it should not be forced to submit to a separate deposition."[58]   The court squarely rejected this position, explaining

> [T]he fact that [the two witnesses] addressed the noticed topics when testifying in their individual capacities is of no consequence. As discussed above, when a person testifies in his individual capacity under Rule 30(b)(1), he speaks on behalf of himself, not his company. Plaintiffs are entitled to learn [defendant's] official corporate position—based on the institutional knowledge of the corporation—on the noticed topics.[59]

Sprint attempts to distinguish *Motor Fuel* on the ground that current employees were deposed therein, but Messrs. Patterson and Elfman are former employees. Sprint suggests that "third-party witnesses" should not have to be burdened with another deposition. These arguments are unpersuasive. First, the fact that the witnesses are former, rather than current, employees of Sprint makes it even less likely that in testifying they were expressing the

---

[58]2009 WL 5064441, at *2 & n.8.

[59]*Id.* at *2.

views of the corporation.   Second, to be clear, Sprint is not required to designate Mr. Patterson or Mr. Elfman for a second deposition.   Although Sprint argues that it would be burdensome for it to "educate an alternative witness on these topics,"[60] such is the nature of Rule 30(b)(6) testimony.   "If need be, the corporation must prepare its designees by having them review prior fact witnesses' deposition testimony as well as documents and deposition exhibits."[61]   Sprint has cited no case to the contrary, nor provided evidentiary support for its "burdensome" argument.

Finally, Sprint argues that TWC's motion should be denied because during the parties' ultimately unsuccessful negotiations, TWC indicated that it would be willing to accept Sprint's designation of Messrs. Patterson and Elfman's testimony on these topics in exchange for certain concessions from Sprint.   This argument is also rejected.   Sprint again has failed to cite caselaw support for its position, and the court can conceive of no rational reason for punishing a party's good-faith attempt to compromise when that attempt ultimately does not end in an agreement.

Because there is no indication that Rule 30(b)(6) does not apply to Topics 33, 34, and 36, this portion of TWC's motion to compel is granted.

**Notice Three, Topics 3–5**

Topics 3–5 of TWC's Third 30(b)(6) Deposition Notice seek information about

---

[60]ECF doc. 761 at 24.

[61]*Miller*, 2008 WL 4724471, at *3.

Sprint's document retention, collection, production, and destruction.  Specifically, TWC

seeks corporate testimony about:

> Topic 3: Sprint's document retention and destruction policies from 1990
> through the present.
>
> Topic 4: Sprint's document retention, collection, and production concerning
> any documents relevant to this Litigation, and in any other lawsuit asserting
> any of the Patents-in-Suit . . . .
>
> Topic 5: The loss or destruction of documents in Sprint's possession, custody,
> or control potentially relevant to this litigation, including from the custodial
> files of Ralph Hodge, Mike Talley, and William Wiley.[62]

Sprint objects to these topics on relevance grounds, arguing that they do not seek facts

relevant to a claim or defense in the action, but instead simply seek "discovery on

discovery."[63]  The court disagrees.

Fed. R. Civ. P. 26(b)(1) provides, "Parties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense—including the existence,

description, nature, custody, condition, and location of any documents."  As noted above,

TWC has asserted the affirmative defenses of equitable estoppel and laches.  The Federal

---

[62]ECF doc. 719-31 at 6–7.

[63]ECF doc. 761 at 26 (citing *Freedman v. Weatherford Int'l Ltd.*, No. 12-2121, 2014
WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) ("In certain circumstances where a party
makes some showing that a producing party's production has been incomplete, a court may
order discovery designed to test the sufficiency of that party's discovery efforts in order to
capture additional relevant material.")).

Circuit has ruled that in patent infringement cases, an element of both defenses is prejudice.[64] A defendant can meet the prejudice element of a laches defense by proving that plaintiff's delay in filing suit has hurt defendant's ability to present a full and fair defense on the merits "due to the loss of records," among other things.[65]   Likewise, a defendant can meet the prejudice element of an equitable estoppel defense by proving that a patentee's misleading communication caused a loss of evidence, such as a "loss of records" or that "documents and correspondence have been destroyed."[66]   Topics 3–5 seek information about Sprint's document retention, and correspondingly, document loss or destruction.   These topics are therefore relevant to the prejudice element of TWC's affirmative defenses, and are the type of matter permitted by the express language of Rule 26(b)(1).[67]   Sprint's relevance objection

---

[64]*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032, 1041–43 (Fed. Cir. 1992).

[65]*Id.* at 1033.

[66]*High Point Sarl v. Sprint Nextel Corp.*, No. 09-2269, 2014 WL 7014661, at *18–19 (D. Kan. Dec. 11, 2014).

[67]*See Doe v. District of Columbia*, 230 F.R.D. 47, 55–56 (D.D.C. 2005) (holding that the express language of Rule 26(b)(1) allows discovery of document retention policy); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc*., No. 05-2164, 2007 WL 1054279, *4 (D. Kan. April 9, 2007) (holding that Rule 30(b)(6) deposition topics about "document retention policies" and "destruction, alteration, or loss" were relevant); *Castillon v. Corr. Corp. of Am.*, No. 12-0559, 2014 WL 4365317, *2 (D. Idaho Sept. 2, 2014) (holding that Rule 30(b)(6) deposition topic regarding defendant's document retention and preservation instructions was relevant); *Parrottino v. Bankers Life & Casualty Co.*, No. 12-13084, 2014 WL 1516195, *5–6 (E.D. Mich. April 17, 2014) (overruling relevance objection and ordering defendant to produce a Rule 30(b)(6) witness to testify about defendant's document retention and destruction policies).

is overruled, and the motion to compel is granted as to these topics.

### Notice Three, Topic 6

Topic 6 of TWC's Third Rule 30(b)(6) Deposition Notice requests Sprint's testimony about:

> Sprint's responses to TWC's First Set of Requests for Admission, including the reason for any failure to unequivocally admit any RFA.[68]

Sprint objects that Topic 6 is "far too burdensome" because it "would require Sprint to prepare a witness to testify on Sprint's position on 31 requests for admission, spanning numerous and unrelated topics."[69]

Although generally the court does not sanction such a broad Rule 30(b)(6) topic, the court overrules Sprint's objection in the present circumstances. First, TWC's requests for admission, though broken down into thirty-one parts, actually cover only two topics (i.e., the parties' anticipation of the lawsuit and the parties' handling of documents and electronically stored information).[70] Second, Sprint's responses to the requests are rife with general objections and equivocal language, which warrant giving TWC an opportunity to tie down Sprint's positions. Finally, and most importantly, Sprint has failed to support its overly burdensome objection with caselaw or evidentiary support. A party asserting undue burden

---

[68]ECF doc. 719-31 at 7.

[69]ECF doc. 761 at 27.

[70]*See* ECF doc. 759-24.

must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.[71]  Accordingly, Sprint's objection is overruled, and the motion to compel is granted as to Topic 6.

IT IS THEREFORE ORDERED that TWC's motion to compel is granted in part and denied in part, as discussed herein.  Where granted, Sprint shall produce a Rule 30(b)(6) witness or witnesses by **July 3, 2015**.

Dated June 15, 2015, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[71]*Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004)); *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003) (overruling objection of undue burden based in part on lack of affidavit or other proof); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (holding that the party objecting to discovery has "the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome").