IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY,
L.P.,

                    Plaintiff,

v.                                            Case No. 11-2684-JWL

COMCAST CABLE COMMUNICATIONS,
LLC, et al.,

                    Defendants.

## **ORDER**

Sprint Communications Company, L.P., brings patent-infringement claims against Comcast Cable Communications, LLC, Comcast IP Phone, LLC, and Comcast Phone of Kansas, LLC (collectively, "Comcast"). Comcast has asserted, among other things, the defense of implied license by equitable estoppel. In support of this defense, Comcast alleges Sprint misled it into believing Sprint would not sue to enforce Sprint's patents, and that Comcast did not become aware that litigation might be imminent until January 2010. Sprint has filed a motion to compel Comcast to produce to the court for *in camera* review documents Sprint contends will refute Comcast's equitable position (ECF No. 1082). Because the court finds Comcast waived privilege over documents referencing Comcast's patent-acquisition strategy and over documents referencing Comcast's anticipated litigation by Sprint, the motion is granted, at least to the extent that it seeks the production of

11-2684-JWL-1082.wpd

documents. The court finds no reason or basis, however, to review such documents *in camera* before they are produced.

**I.     Background**

The instant motion stems from Comcast's recent production of 28 documents in a related patent-infringement case pending between the parties in the Eastern District of Pennsylvania.[1]  In a January 9, 2017 pretrial order, the Pennsylvania court ruled that should Comcast present trial testimony regarding its patent-acquisition policy, it must do so through a non-lawyer who first must sit for a deposition and produce all documents related to such a policy. Comcast designated Jim Finnegan, its Vice President of Strategic Intellectual Property, as its witness in this regard.

Finnegan searched his documents as required by the pretrial order and identified some documents Comcast had not previously produced or logged as privileged. In addition, Comcast's Pennsylvania counsel determined other documents had been incorrectly designated as privileged and should be produced. On January 18, 2017, Comcast produced 28 documents, a few related to Comcast's patent-acquisition strategy and the remainder related to Comcast's June 2010 acquisition of a patent from Nokia Mobile Phones, Ltd.[2]

---

[1]*Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co.,* Eastern District of Pennsylvania, No. 12-859. The Pennsylvania case involves assertions by Comcast against Sprint of patents Comcast acquired from third parties.

[2]Because the parties have an agreement on the cross-use of discovery in the cases between them, Sprint now has the documents (some redacted) for use in this case.

Sprint's motion notes one document in particular: a document dated November 5, 2007, which, under the heading "IP Efforts: Necessary Resources," includes the words: "<u>Licensing and Litigation</u> • Prep for Verizon, Sprint, AT&T."[3]  The document appears to have been prepared by Finnegan and presented to Comcast's General Counsel and Comcast's Chief Technology Officer.

On January 20, 2017, Sprint deposed Finnegan in the Pennsylvania case.  Finnegan answered questions regarding Comcast's patent-acquisition strategy.  Specifically, Finnegan testified that "Comcast has bought patents to counter-assert in litigations," and that Comcast purchased patents from Nokia "as part of [Comcast's] general patent-acquisition strategy which was to acquire high-quality, litigation-grade patents primarily defensively."[4]  The questions that evoked this testimony had been asked during Finnegan's December 12, 2014 deposition in this case, and at that time Finnegan declined to answer (upon advice of Comcast counsel) on attorney-client privilege grounds; Finnegan said he could not explain Comcast's reasons for purchasing patents without revealing communications with counsel.

Following the recent additional discovery in the Pennsylvania case, counsel for the parties in this case met and conferred, and participated in two status conferences with the undersigned U.S. Magistrate Judge, James P. O'Hara, about what additional documents, if any, Comcast should produce in this case.  At Sprint's request, Comcast re-reviewed 118

---

[3]ECF No. 1082-19 at 25 (underlining in original).

[4]ECF No. 1082-9 (citing deposition transcript at 16:14–17 & 64:1–12).

documents listed on its privilege logs that Sprint had identified as possibly subject to production "under Comcast's new [privilege] position" on the subjects of "(1) Comcast's acquisition of patents from 2007-2010 for purposes of enforcing them against Sprint, and (2) Comcast's preparation for litigation with Sprint."[5] In addition, Comcast (1) confirmed all documents in Finnegan's possession relating to Comcast's patent-acquisition strategy had been collected, (2) conducted a search of Comcast's in-house patent counsel's documents concerning Comcast's patent-acquisition strategy and acquisition of patents from HP and Nokia, (3) reviewed previously collected documents to identify any that are potentially related to Comcast's patent-acquisition strategy, and (4) reviewed all documents that had not previously been produced in full from the 2007–2010 time period (or that lacked a date designation) that were collected from the files of Finnegan, or sent to or from Finnegan. As a result of these steps, on February 6, 2017, Comcast produced 15 additional documents (some with portions redacted),[6] a redaction log with five entries,[7] and a privilege log with nine entries.[8]

## II.    Analysis

Sprint moves the court to order Comcast to produce for *in camera* review all

---

[5]ECF No. 1082-13 at 5–6.

[6]ECF No. 1082-18.

[7]ECF No. 1082-17.

[8]ECF No. 1082-16.

documents (1) that mention Sprint and concern "Comcast's patent acquisition[s]," and (2) that reflect "the timing and nature of any Comcast employee's belief that Comcast was preparing for or otherwise anticipated litigation with Sprint."[9] Sprint contends the production it now requests—months after discovery has closed—is justified by the fact that Comcast did not previously disclose the existence of such documents and/or did assert privilege over the information they contained. Sprint argues any privilege protection that previously may have insulated information on these two topics was waived when Comcast produced the 28 documents on January 18, 2017, and/or when Comcast permitted Finnegan to testify on the topics on January 20, 2017.[10] Sprint also supports its motion by noting that less than half of the 28 documents produced in January were identified on Comcast's earlier privilege logs.

A party waives the attorney-client privilege if it discloses the substance of an otherwise-privileged communication.[11] Comcast makes no serious argument that it did not waive privilege by its January 2017 production or by allowing Finnegan's recent testimony. Comcast does note that the judge in the Pennsylvania case affirmatively determined that he

---

[9] ECF No. 1082 at 2–3.

[10] Because Sprint raised this waiver argument in an e-mail to the court within days of the Comcast production on which the argument is based, the court rejects Comcast's argument (ECF No. 1095 at 12–13) that Sprint's privilege challenge is untimely.

[11] *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006); *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 3611665, at *3 (D. Kan. July 22, 2014). *See also GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (holding that in a patent case, the issue of waiver by disclosure of privileged information is governed by regional circuit law).

need not—and did not—decide the question of waiver, but that fact has no bearing on the waiver question which has now come before this court.[12]

Although unclear, Comcast's brief could be read to argue that Comcast's recent production did not reveal privileged information that could be waived. To the extent Comcast makes this argument, the court rejects it. As discussed in an earlier order, the attorney-client privilege protects communications, made in confidence, between a client and a professional legal advisor, relating to legal advice sought by the client.[13] Sprint asserts, "the 28 new documents clearly reflect privileged information. Indeed, many state on their face that they are work-product-protected and privileged. All of them deal with preparation for suit with various companies and Comcast's patent acquisition policies—issues that are indisputably privileged."[14] Comcast does not attempt to refute this statement, leading the court to accept it as uncontroverted. Indeed, the November 5, 2007 document presented by Finnegan to Comcast's General Counsel and Chief Technology Officer revealed the substance of attorney-client communications, specifically, that in 2007 Comcast presented

---

[12]In the Pennsylvania case, the parties reportedly reached a stipulation on the waiver issue, which will govern in that case. For this reason, the court rejects Comcast's vague argument that deciding the issue in this case could "achieve an inconsistent result" that Sprint could use to "disrupt or interfere with the Philadelphia case." ECF No. 1095 at 13.

[13]ECF No. 177 at 10 (citing *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009)).

[14]ECF No. 1082 at 9.

information to its attorney about preparing for potential litigation by Sprint.[15]

Sprint also argues Finnegan's recent deposition testimony concerning Comcast's due diligence in acquiring defensive patents revealed attorney-client communications. Comcast (again) does not address this assertion in its response brief. The court agrees with Sprint. As noted above, Finnegan previously had declined to answer questions on this topic on the ground that explaining Comcast's reasons for purchasing patents would necessarily reveal privileged communications with counsel. Thus, when Finnegan later discussed Comcast's patent-acquisition strategy, he necessarily must have revealed privileged communications with counsel.

The court has little trouble concluding Comcast's recent disclosure of information in the Pennsylvania case waived the attorney-client privilege. Perhaps the more significant question, however, is the scope of the waiver. Sprint asserts the disclosures waive privilege for all "information concerning the same subject matter."[16] Specifically, Sprint argues Comcast must produce all documents it possesses that (1) mention Sprint and concern "Comcast's patent acquisition[s]," or (2) reflect "the timing and nature of any Comcast employee's belief that Comcast was preparing for or otherwise anticipated litigation with

---

[15]Comcast asserts that Finnegan has since testified that his inclusion of Sprint in the document was a mistake, based on his relative newness in his position with Comcast, and that by February 2008 he was identifying Sprint as a "friendly entity." *See* ECF No. 1095 at 10 n.5. Comcast is free, of course, to offer this purported clarification at trial, but the document is nonetheless discoverable under the standards of Fed. R. Civ. P. 26(b)(1).

[16]ECF No. 1082 at 7.

Sprint."[17]

The presiding U.S. District Judge, John W. Lungstrum, addressed the applicable standards for subject-matter waiver in a July 22, 2014 order in this case:

> The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not. There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.[18]

Judge Lungstrum went on to state that under Fed. R. Evid. 502(a) and its Explanatory Note, waiver extends to undisclosed communications concerning the same subject matter if the intentionally disclosed information "ought in fairness . . . be considered together" with the undisclosed information.[19] "[A] subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."[20]

---

[17]*Id.* at 1–2.

[18]*Sprint v. Comcast*, 2014 WL 3611665, at *3 (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005)).

[19]*Id.* at *4.

[20]*Id.* (quoting Explanatory Note to Fed. R. Evid. 502).

Sprint argues fairness requires full disclosure of documents discussing Comcast's defensive patent-acquisition strategy and/or the timing of Comcast's anticipation of litigation with Sprint. Sprint asserts Comcast disclosed communications on these topics when they supported Comcast's trial position in the Pennsylvania case, but concealed communications on the same subject matter in this case because they do not support Comcast's position here that "prior to 2010, Comcast's motivation for purchasing patents was to defend against potential suits by Verizon, not Sprint."[21] The court agrees. Comcast admits it produced the new documents and Finnegan's testimony in the Pennsylvania case only after the judge there ruled Comcast would not be permitted to present testimony at trial of its patent-acquisition policy without first producing "all documents related to Comcast's patent acquisition policy" and producing its witness on the topic, Finnegan, for deposition.[22] Thus, to protect its trial interests, Comcast disclosed protected communications. But in this case, Comcast has asserted privilege over information on the same subjects, during both depositions and discovery responses. Fairness requires Comcast to disclose all documents on these two subjects "in order to prevent a selective and misleading presentation of evidence" in this case.[23]

---

[21]Comcast's reply in support of summary judgment of equitable estoppel, laches, and noninfringement, ECF No. 994 at 14.

[22]ECF No. 1095 at 5 (quoting E.D. Pa. ECF No. 352).

[23]The court rejects Comcast's argument that Sprint's motion should be denied because Comcast has not put protected communication "at issue" or relied on an opinion of counsel

The court therefore concludes Comcast waived privilege over, and must immediately produce, unredacted copies of all documents not previously produced that (1) mention Sprint and also Comcast's patent acquisitions or (2) reflect the timing and nature of any Comcast employee's belief that Comcast was preparing for or otherwise anticipated litigation with Sprint.[24] As earlier indicated, Sprint has asked that such documents be produced to the court for *in camera* review. But as Comcast notes, caselaw requires the court to "have some bases or grounds for conducting an *in camera* review."[25] Although the decision to review documents *in camera* is within the court's sound discretion, such review is not "to be routinely undertaken."[26] The court finds no basis on which to conduct an *in camera* review over all the documents affected by Comcast's subject-matter waiver. Thus, at this time (though without foreclosing the future possibility if issues arise as to specific documents), the court declines to review any documents *in camera*.

---

to support its defenses. These factors are relevant to an analysis of implicit waiver (also called "at issue" waiver), which Sprint has not alleged here. *See Sprint v. Comcast*, 2014 WL 3611665, at *5–8 (analyzing implicit-waiver separately from explicit, subject-matter waiver).

[24] As far as the court can tell, the production Sprint envisions would encompass (1) unredacted copies of the documents Comcast produced on January 18, 2017, as well as copies of attachments referenced in then-produced e-mails (but not themselves produced), (2) unredacted copies of the documents Comcast produced on February 6, 2017, (3) documents listed on Comcast's February 6, 2017 privilege log, and (4) some or all of the 118 documents listed on Comcast privilege logs which Comcast recently reviewed at Sprint's request.

[25] *Black & Veatch Corp. v. Aspen Ins. (UK) LTD*, 297 F.R.D. 611, 621 (D. Kan. 2014) (quoting *Mounger v. Goodyear Tire & Rubber Co.*, No. 99–2230–JWL, 2000 WL 33712198, at *1 (D. Kan. Sept. 22, 2000)).

[26] *Id.* (quoting *Mounger*, 2000 WL 33712198, at *1).

IT IS THEREFORE ORDERED that Sprint's motion to compel is granted, as discussed herein. Comcast shall produce the documents as ordered by **February 27, 2017.**

Dated February 23, 2017, at Kansas City, Kansas.

                                                  s/ James P. O'Hara
                                                  James P. O'Hara
                                                  U.S. Magistrate Judge